## Union Gas & Oil Company v. Diles.

(Decided June 22, 1923.)

### Appeal from Johnson Circuit Court.

1. **Mines and Minerals—Oil Lessee is Impliedly Obliged to Protect from Draining by Other Wells.**—Even if a lease contains no provision requiring the lessee to protect the leased premises from drainage of oil or gas by wells on adjacent property, there is an implied obligation read into such contracts to give such protection.

2. **Mines and Minerals—Oil Lessee has no Specific Duty to Drill Offset Wells Under Definite Conditions.**—The implied obligation of a lessee to protect the leased premises from drainage of oil and gas through adjoining wells is a general duty only, and not a specific duty to drill offset wells, where the wells on adjoining property are within any named distance of the property line, nor does it require him to drill an offset well with diligence, or provide that his failure to do so shall automatically result in cancellation of the lease.

3. **Mines and Minerals—Oil Lessee Need Only Exercise Good Faith in Protecting from Drainage.**—Under the implied obligation of an oil lessee or an express obligation in the lease to protect the property from drainage through wells on adjacent lands, it is within the sound judgment of the lessee to determine when and where the offset wells shall be drilled, or whether they shall be

drilled at all, and his determination of these questions is conclusive, in the absence of fraud.

4. Constitutional Law—Statute Requiring Lessee to Drill Offset Wells Under Stated Conditions Impairs Obligation of Contracts.—Acts 1920, c. 24, section 4, requiring a lessee under an oil or gas lease, within three months after written notice is given him that oil is being produced and transported from a well on adjoining premises within 200 feet of the boundary of the leased premises, to drill an offset well or to forfeit his lease, when applied to pre-existing oil or gas leases as provided by section 2 of that act, impairs the obligation of the lease contract.

5. Constitutional Law—Imposing Greater Duty on Party to Contract Than is Imposed by Instrument Under Existing Law "Impairs" its Obligations.—To impair an obligation, within the meaning of the federal and state Constitutions, it is only necessary to impose on one of the parties a higher or greater duty than the one imposed upon him by the instrument itself, or by the implied conditions which the law existing at the time of its execution will read into it, since "impair" means to make worse, to diminish in quality, value, excellence, or strength, to weaken, to deteriorate, and the extent of the impairment is immaterial.

HOLT, DUNCAN & HOLT and OTTO C. GARTIN for appellant.

HOWES & HOWES for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

In May, 1916, appellee executed an oil and gas lease on his farm in Johnson county to A. C. Albin, which lease was thereafter in 1917 assigned to appellant.

In April, 1921, appellee, acting under the provisions of section 4 of chapter 24 of the Acts of the General Assembly of 1920 (p. 110), which act became effective March 18, 1920, gave a written notice to appellant in which he recited that a producing oil well had been brought in on the adjoining farm of John Rose and within two hundred feet of appellee's line and that oil had been marketed and sold from said premises, and requiring appellant to drill on his, appellee's, farm an offset to that well under the provisions of the act referred to.

Appellant having failed to drill such offset well, this equitable action by appellee was filed in September, 1921, seeking a cancellation of the lease on that account, and no other.

Several issues of fact were made in the pleadings, and the chancellor upon submission entered a judgment can-

celling the lease, and from that judgment this appeal is prosecuted.

In view of our conclusion that the legislative act in question, in so far as it attempts to impose upon the lessee an added duty not imposed by law at the time the lease contract was entered into, and requires the drilling, after notice, of such offset wells therein described, is an impairment of the obligations of the contract in contravention of the provisions of both the state and Federal Constitutions, we deem it unnecessary to consider any other question.

The lease contains no provision whatever requiring the lessee to protect the leased premises from drainage of oil or gas by reason of wells on adjacent or nearby property; but there is an implied obligation, read into such contracts, upon the lessee to protect such premises from drainage by wells drilled on adjoining lands. That implied obligation, however, is a general one, and from its nature only imposes upon the lessee the general duty to protect the leased property from such drainage, but imposes upon him no specific duty as to the drilling of offset wells where the wells on adjoining property are within any named distance of the property line, nor does it require of him the drilling of such offset well with diligence, or provide that his failure so to do shall automatically bring about the cancellation of his lease.

Not only so, where there are general provisions in an oil and gas lease imposing the duty upon the lessee to protect the property from drainage by wells on adjacent lands, or when such general duty is imposed upon him by implication of law, it is within the sound judgment of the lessee to determine when and where the offset wells shall be drilled, or whether they shall be drilled at all. As said by the Circuit Court of Appeals in the case of Kellar v. Craig, 126 Fed. 630:

"In all leases for oil and gas purposes, a covenant to protect the 'lines' of and 'well develop' the land leased is implied by law, and so it follows that the general words relating to those matters, inserted in the lease under consideration, really add nothing to the obligations assumed by the lessee concerning such work. In such leases, where general covenants of that character are found or are implied, the lessee or his assigns are permitted to determine the character of work to be done, and such ascer-

tainment by him or them, in the absence of fraud, disposes of the question.''

The legislative enactment in this state, by its terms in the second section thereof, is made to apply to ''existing or future contracts and leases for oil and gas rights,'' and the fourth section thereof, imposing the duty upon lessees to drill offset wells, is as follows, to-wit:

''That in the event of oil or gas being discovered in paying quantities on an adjoining leasehold and the products therefrom being taken out of the ground and marketed and said well is within two hundred feet of another lessor's property line, then within three months after written notice has been given lessee to the effect that such oil or gas has commenced to be transported off and marketed from the said adjoining premises the lessee or lessees of the land lying within two hundred feet of said wells shall begin to drill an offset well to each of such wells so located, provided said offset wells to be drilled are not less than five hundred feet of each other, and upon his failure to so commence said offset well and complete same with diligence the said contract and lease shall automatically expire and become null and void. Provided this shall not apply to leases that are being operated, or on which wells are being drilled.''

It appears, then, that in 1916 when this lease was executed only the general duty implied by law was imposed upon the lessee to protect the leased property from drainage by wells on adjacent property, and that same law which imposed that general duty on him clothed him, in the absence of fraud, with the discretion to determine when and how and to what extent, if any, such protection was necessary.

It would appear to need no argument to show that the act in question imposes upon the lessee duties and obligations different from and greater than those implied by law at the time the parties entered into the contract. The implied duty imposed in the first place did not require him to look to the distance the well on the adjoining property might be from the property line, nor did it require of him diligent completion of an offset well upon pain of forfeiture of his lease. Not only so, that implied obligation was one which might be carried out by him in the exercise of a sound judgment if he acted in good faith, while the statute enacted in 1920 undertook to read into his lease contract an absolute duty upon his part to drill offset wells when

the conditions stated in the quoted section existed, irrespective of the exercise of his sound judgment and discretion, and without regard to fraud, upon penalty of having his lease declared null and void.

To impair the obligation of a contract within the meaning of the Constitution it is only necessary to impose upon one of the parties a higher or greater duty than the one imposed upon him by the instrument itself, or by the implied conditions which the law will read into it. As said in Edwards v. Kearsey, 96 U. S. 595:

"The lexical definition of 'impair' is to make worse, to diminish in quality, value, excellence or strength, to lessen in power, to weaken, to enfeeble, to deteriorate. . . And the test does not depend upon the extent of the change which the law effects; any deviation in its terms by which conditions not expressed in the contract are imposed, or those stipulated in the contract are dispensed with, renders the act unconstitutional as impairing its obligation."

When the contract was entered into the general implied obligation rested upon the lessee to protect the leased property from drainage, and he had the right to exercise his judgment and discretion in good faith in determining when and how and to what extent such protection should be given, if at all. The statute in question, however, not only deprives him of the right which he had under the original contract to exercise his judgment and discretion, but it imposed upon him and undertakes to read into his contract an absolute duty upon his part to drill an offset well if the well on the adjoining property is within two hundred feet of the property line, and to complete such well diligently, or suffer the penalty of having his rights under the lease destroyed.

The case of Green v. Biddle, 8 Wheat. 1, among other questions, presented the one whether a certain act of the General Assembly of Kentucky concerning occupying claimants of land was in violation of the compact between the states of Virginia and Kentucky, and impaired the obligation of such contract so embraced in the compact. The Supreme Court of the United States, in holding that the legislative act did impair the obligation of the contract, said:

"The objection to a law, on the ground of its impairing the obligation of the contract, can never depend upon the extent of the change which the law effects in it. Any

deviation from its terms, by postponing, or accelerating, the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute, or apparently immaterial, in their effect upon the contract of the parties impairs its obligation.''

· In the case of State Tax on Foreign Held Bonds, 15 Wall. 300, the state of Pennsylvania passed an act requiring the officers of certain corporations in that state to withhold a certain percentage of the interest on bonds of the company and pay over the same to the treasurer of the state for the use of the Commonwealth, thereby attempting under the guise of a tax to require non-resident bondholders of such company to accept as interest on their bonds a less amount than that stipulated in the contract. The Supreme Court of the United Sates, in holding that the act impaired the obligation of a contract, said:

''The obligation of a contract depends upon its terms, and the means which the law in existence at the time affords for its enforcement. A law which alters the terms of a contract by imposing new conditions, or dispensing with those expressed, is a law which impairs its obligation, for, as stated on another occasion, such a law relieves the parties from the moral duty of performing the original stipulations of the contract, and it prevents their legal enforcement.''

The case of Murray v. Charleston, 96 U. S. 432, was somewhat similar to the last above quoted case.

The case of Robinson v. Magee, 9 Cal. 81 (70 Am. Dec. 638), was where a legislative act of California required pre-existing creditors of a certain county to register their warrants by a given date on pain of forfeiture. That court, in holding that the act was unconstitutional because it impaired the obligation of a contract, said:

''As the law enters into the contract, and forms a part of it, the obligation of such contract must depend upon the law existing at the time the contract was made. The contract being, then, complete and operative, the legislature cannot, by a subsequent act, impair its obligation by requiring the performance of other conditions not required by the law of the contract itself. The rights, as well as the intentions of the parties, are fixed and ascertained by the existing law; therefore, to require the performance of other conditions to make the contract oper-

ative is to impair its obligation. The power to impose conditions after the contract is once complete and perfect is nothing but the power to impair its obligation, and this the constitution has prohibited.''

The Supreme Court of Missouri had before it a similar question in Schuster v. Weiss, 114 Mo. 158 (19 L. R. A. 182), and in upholding the same doctrine quoted from Black on Constitutional Prohibitions, as follows:

''It is perfectly clear that any law which enlarges, abridges, or in any manner changes, the intention of the parties resulting from the stipulations in the contract, necessarily impairs it. The manner or degree in which this change is effected can in no respect influence the conclusion; for, whether the law affect the validity, the construction, the duration, the discharge, or the evidence of the agreement, it impairs the obligation, though it may not do so to the same extent in all the supposed cases.''

And then the court itself proceeded to say:

''The extent of the change is immaterial. The imposing of conditions not in the contract, however minute or apparently immaterial, impairs the obligations.''

This court in the case of Bellevue v. Peacock, 89 Ky. 495, had under consideration the validity of a legislative enactment giving to a town a lien upon abutting property for the benefit of contractors who had improved the same when at the time of the improvement there was no authority of law, either express or implied, to so bind the property. The court, in holding the act unconstitutional, said:

''When the contract was entered into the town had no authority, express or implied, to bind his property for the cost of the improvement, and when the statute, by virtue of which relief is now asked, was enacted, there was no pre-existing right as against him, or to look to his property. In short, the legislature, by this act, has attempted to afford a remedy against a party as to whom no right, legal or equitable, existed.''

Other authorities are Barnitz v. Beverley, 163 U. S. 118; Northern Pac. Ry. Co. v. Duluth, 208 U. S. 583; American Mercantile Exchange v. Blunt, 102 Me. 128 (120 Am. St. Rep. 463, and note); Maverick Oil & Gas Co. v. Howell, 193 Ky. 433.

Being of opinion, therefore, that the legislative enactment in question imposes upon the lessee the performance of duties not imposed by the terms of the lease or by

the law in effect at the time the contract was entered into, and restricts his rights under the law as it then existed, the same is violative of the constitutional inhibition contained in both the Federal and state Constitutions, and is void as applied to pre-existing contracts.

The judgment is reversed with directions to dismiss the plaintiff's petition.

Whole court sitting.