## Carroll Gas & Oil Company et al. v. Skaggs et al.

(Decided October 29, 1929.)

KIRK & WELLS, WHEELER & WHEELER and FOWLER, WALLACE & FOWLER for appellants.

FRED HOWES for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellees executed and delivered to James W. Wright an oil and gas lease on February 5, 1921. Wright transferred the lease on October 21, 1921, to D. L. Johnson and others. Johnson and others transferred an interest in the lease to one Sandusky on October 24, 1921. On December 6, 1921, Johnson and his associates including Sandusky, transferred the lease to appellant Carroll Gas & Oil Company. While Johnson and his associates owned and were in the possession of the lease, they drilled a well which proved to be a gas well. After they transferred the lease to appellant Carroll Gas & Oil Company, a controversy arose between them and the company growing out of the contract. As a result of that controversy, nothing was done towards marketing the

gas which was capable of flowing from the well. The company was making the contention that the contract had been obtained through misrepresentation, while Johnson and his associates were denying this contention. During this controversy, which was in the courts, neither of the parties to the assignment did anything towards development of the lease, or marketing the gas. Each party was claiming that the other was the owner of the lease. The controversy was finally determined by the courts, and it was adjudged that the company was bound by the contract.

In the meantime appellees had done nothing, and, so far as the record shows, had made no complaint. In October, 1924, appellees instituted an action seeking a cancellation of the lease, and, in the same petition, seeking damages by reason of the failure of the owners of the lease to market the gas, and alleging that by reason of other wells located on adjacent property the gas had all been drained from the lease.

Judgment was awarded by the court canceling the lease in April, 1927, but the question of damages was deferred. No appeal has been taken from that judgment.

After the completion of the proof in the case, and before the judgment canceling the lease was awarded, appellees filed an amended petition alleging with more particularity their cause of action, and claiming damages in the sum of $25,000. The cause was referred to the master commissioner to take proof on the question of damages, which he did. In his report he fixed the damages sustained by appellees caused by the failure to market the gas at $1,100. Exceptions were filed to the report by Johnson and his associates, and by the Carroll Gas & Oil Company. The court overruled the exceptions and sustained the findings of the commissioner entering judgment against Johnson and his associates, and the Carroll Gas & Oil Company for $1,100 with interest and costs. From this judgment an appeal has been prosecuted.

Several points are argued by counsel for appellants against the judgment below, and we will dispose of some of them very briefly. It is insisted that the demurrer to the petition should have been sustained because there was no allegation that there was gas underlying the land in paying quantities. The amended petition contains such an allegation. It is insisted that even if the well

produced sufficient gas to denominate it a paying well under certain circumstances it should have been alleged that the well was in such proximity to a pipe line that the gas could have been transported to market with profit to the lessees. When it was alleged that there was gas in paying quantities, it was a question of proof as to whether the lessees could market the gas profitably. The petition as amended stated a good cause of action.

It is insisted that the proof does not show that the well, under all the circumstances, produced gas in paying quantities. The proof is conflicting on this point. Appellees were to receive one-eighth of the value of the gas by the terms of the lease when it should be marketed. It is shown that an offset well was drilled on another tract of land soon after the bringing in of the well on this lease. It was also shown that there were other wells from which gas was produced and marketed on adjoining leases. There is a conflict in the evidence on the question of whether the well could have been connected with a pipe line at reasonable expense. The mind is left in doubt on this question, and in such cases the judgment of the chancellor will not be disturbed.

It is urged with much force that the lease expired by its terms soon after the well was brought in, and that the appellees should have taken possession of the lease upon its expiration. We are unable to agree with this contention. The lease contained the provision that the drilling of a well should be full consideration to the grantor for the lease, and that when the well was completed the exclusive right to drill one or more additional wells on the premises was conferred upon the lessees without payment of additional rentals. The lease contract contains the further provision that it was for a term of 18 months and as much longer as oil or gas should be produced in paying quantities. If the well produced gas in paying quantities, the term of the lease did not expire at the end of 18 months.

The lease contract also contained a provision that the grantee should have the exclusive right to surrender the lease at any time prior to the expiration of any rental paying period by executing a release or deed of surrender and recording the same in the county wherein the land was situated, and that the grantee should then be discharged of all obligations, covenants, and conditions contained in the lease. It is true there was to be no pay-

ment of rentals after the first well was completed, but the lessors were to receive one-eighth of the market value of the gas, if gas should be found in paying quantities, in lieu of rentals and that provision should be held to apply to the lessees, and if they desired to be acquitted of further responsibility by reason of the lease contract they should have executed a release in the manner provided. 1 Thornton's Law of Oil and Gas (4th Ed.) p. 470, thus states the rule where there is a statute requiring the execution of a release: "Where a statute required a lessee to execute a release and record it when he surrendered the premises, it was held that he was liable in damages if he refused or neglected to do so."

If such is the rule, where a statute requires it, the parties may contract with the same effect as if a statute did require it. 40 C. J. 1097, thus states the rule: "Where the lease specifies the mode of surrender such mode must be followed; the surrender cannot be made in any other way without the consent of the lessor."

The lessors were under no obligation to take possession of the lease and attempt to market the gas for the reason that the lessees were not doing so.

It is insisted that the appellants were under no obligation to market the gas as the lease did not specifically provide that the gas should be marketed at any particular time. There is this provision in the lease contract: "Should a well be found producing gas only then the grantor shall be paid for gas the equal one-eighth part of all the gas produced each quarter in which the gas is sold therefrom."

The necessary inference from that provision is that the gas was to be marketed within a reasonable time. Summers on the Law of Oil and Gas, p. 420, sec. 131, thus states the rule:

"An oil and gas lease may, in general terms, ex pressly state that the lessee is under a duty to market the oil or gas found in the land. In the absence of such provision, there is an implied duty of the lessee to market the product, in order that the lessee may realize the principal consideration of the lease; that is, the royalties. It would be of little benefit to the lessor to have express or implied duties on part of the lessee to test, develop and protect the

land by the drilling of wells, if the lessee might cap the wells and refuse to market the product.

"A failure to market oil or gas may result in the creation of rights of action on part of the lessor upon three different theories. The lease may be for a definite term of years, and to continue thereafter as long as oil or gas are produced in paying quantities. Production within the definite term is a condition precedent to the extention of the lease beyond such terms. Therefore, if the lessee has, within the definite term, discovered oil and gas within the limits of the definite term, but has capped the wells and failed to market the product, the lessor may proceed upon the theory that the lease came to an end by its own terms at the end of the definite term. In the second place, the lessor may proceed upon the theory that a failure to market the product after discovery is sufficient evidence from which to presume an intent on part of the lessee to abandon the premises, and seek cancellation on that ground. Finally the lessor may seek cancellation or damages for breach of an express or implied duty on the part of the lessee to market the product, so that the lessor may realize the consideration for which the lease was made."

It is argued by counsel for appellants that the doctrine of self-help applies in this case, and that the lessors should have taken possession of the lease and marketed the oil themselves, or that they should have protected it from drainage. Conceding that the lessors may have been within their rights in taking possession of the lease, yet they were under no obligation to do so, and they were within their rights in standing on the contract as it was written. Lessors are not ordinarily men who are experienced in the operation of gas wells, and they are not often in position to do that which is necessary to market the gas, and it would be a harsh rule if it should be held that the lessees may abandon a producing well to the damage of the lessors, and the lessors should be deprived of a recovery on the ground that they should have taken possession of the lease and operated it themselves.

It is the general rule that where there has been a breach of an existing duty in the lessee, either express or implied, to market gas from a paying well, the lessor ordinarily may recover damages for the breach. Summers

on the Law of Oil and Gas, p. 445, sec. 138 and notes thereto.

There is always a serious objection to actions of this nature because of the difficulty to determine with certainty the amount of damages sustained by the lessor growing out of the duty of the lessee. But this difficulty does not prevent his seeking his remedy at law if he elects so to do. In the case of Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308, 310, the court said:

"Plaintiff in error contends that, even if a right of action exists, no recovery can be had because the damages are uncertain, remote, and speculative. . . . It is undoubtedly the law that, where speculation or conjecture must be resorted to for the purpose of determining whether the injury results from the wrongful act charged or from some other cause, then the law denies the injured party his action for damages. This is only another way of stating the familiar rule that damages must be the proximate result of the injury complained of. . . . The right of recovery being assumed, plaintiff in error cannot escape liability because the damages are difficult of exact ascertainment. The nature of the inquiry here is such that it is practically impossible to ascertain with mathematical certainty the exact amount of defendant in error's damages. This, however, affords no answer to a cause of action resulting from the breach of contract or a duty imposed by law. The unliquidated damages growing either out of breach of contract or the commission of a tort are seldom susceptible of exact measurement. If such exactness were required, the law of damages would be of little practical value. The rule is that, while the law will not permit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence of which the subject will admit is receivable, and this is often nothing better than the opinion of well informed persons upon the subject under investigation."

The foregoing quotation seems to correctly state the general rule. The evidence in the case before us is sufficient to show that appellants breached their duty, and that appellees sustained damages by reason of that breach of duty. For about four years the well was capped and no gas was marketed therefrom. During that

time the proof tends to show the gas was drained from the lease through wells on adjacent property. The amount awarded appellees in damages was small. It was admitted that the well was capable of producing, in the beginning at least, 194,000 cubic feet every 24 hours. It is shown that about one-third of the open production at the mouth of the well may be marketed. This would have permitted the marketing of about 60,000 cubic feet daily. It is established that the market price of gas in that territory was 10 cents per 1,000 cubic feet. On this basis the income would have been $6 for each day. Of this sum appellees were entitled to one-eighth, or 75 cents. On this basis the amount allowed by the commissioner and confirmed by the chancellor was substantially correct. It was proven that the well was capable of producing much more, and that the other wells in the neighborhood were producing from 500,000 to 1,000,000 cubic feet daily. But there was evidence on the other hand showing that the well would not have produced the amount of 194,000 cubic feet daily. Taking the evidence as a whole, the judgment was reached through a mathematical calculation as accurate as may be applied in measuring the damages in cases such as this. It cannot be said that the judgment of the chancellor was against the weight of the evidence, or that it was excessive.

The burden is always on the lessor to show his damages. It was held in the case of Duff v. Bailey et al., 96 S. W. 577, 29 Ky. Law Rep. 919, that a lessor in a lease to explore for oil and gas by drilling a well cannot recover damages for the lessee's failure to drill a well without showing that there was oil and gas in the territory to be developed.

It is always difficult to show with certainty how much a lessor has been damaged in such cases because of the nature of the subject-matter. There is not so much difficulty about the measure of damages as there is in obtaining the proof to establish with sufficient certainty what the damages have been. If it can be shown with reasonable certainty that the land covered by the lease would have produced a certain quantity of gas, and that the lessor was entitled to a certain portion of the proceeds, the proper measure of damages is the value of the royalty of the lessor which he did not receive and which he would have received if the production had been marketed. The rule is not uniform. It might well be argued that if the oil or gas was not taken out within a certain

period, it still remained in the land and might be taken out later. But in this case the proof is sufficient to show that gas had been taken from the land which was gone forever, and to the extent of the value of the royalty the lessors were damaged.

In the case of Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, 290, 19 A. L. R. 430, the rule was thus stated by the court: "Hence under the evidence disclosed by the record, the measure of damages in the present case will be the amount of royalty that the lessors should receive from the quantity of gas which has been or may hereafter be proved to have been drawn from the leased premises."

It appears in that case that the lessor sought his remedy in damages alone, and the court not only allowed him to recover the value of his royalty in the product which had been removed, but, in addition, allowed him to recover the value of the royalty in the product which might thereafter be removed. In the case before us, however, lessors obtained a cancellation of the lease, and they are precluded thereby from claiming anything by reason of the gas that may be drained from the land in the future. They sought a double remedy. That is, they sought a cancellation of the lease which they obtained, and, in addition, they sought damages to the extent of the value of their royalties in the gas which was drained from their land prior to the cancellation. Whether the court below was right or wrong in an enforcement of a forfeiture is not before us, as there was no appeal from that judgment.

We are confronted with the argument made by counsel for appellants that, the appellees having elected to seek and obtain a forfeiture of the lease, they are estopped to recover damages for a breach of an express or implied covenant in the lease. It is insisted that the election on the part of the appellees to prosecute an action for a cancellation of the lease contract ended their rights, and that when they obtained that relief they were awarded all that they were entitled to. Probably we might rest the opinion in this case in opposition to that claim on the ground that appellees sought both a cancellation of the contract and damages for its breach in their original petition, and we find no motion to require them to elect which cause of action they would prosecute. Section 85 of the Civil Code of Practice makes it the duty

of the court at any time before defense, on motion of a party, to require the adverse party to elect which of two or more causes of action improperly joined he will prosecute, and if he fail to elect it is the duty of the court to strike out any cause of action improperly joined with another, and the following section provides that objections to the misjoinder of causes of action are waived unless they are made before defense. The original petition sought damages in the sum of $1,000. By amended petition the amount sought was increased. It appears that there should have been a motion requiring appellees to elect, or the question was waived. Hunt v. Semonin, 79 Ky. 270, 2 Ky. Law Rep. 334; Humphrey v. Hughes, 79 Ky. 487, 3 Ky. Law Rep. 273; Ramsey v. Hughes, 212 Ky. 715, 280 S. W. 99.

But waiving the correctness of the contention made by counsel for appellees that appellants may not raise the question for the first time in this court, we will consider the question as presented. Counsel for appellees rely on the case of Church v. Wright Machine Co., 190 Ky. 561, 227 S. W. 1003. In that case appellant had purchased certain machinery which he alleged proved to be worthless. He did not retain the machinery and sue for damages, but attempted to return it and sued for a rescission of the contract. The court held that the machinery was not returned within a reasonable time, and for that reason there could be no rescission. In the same action he sought to recover damages, but this court held that he had elected to sue for a rescission of the contract, and that he was estopped to recover damages.

In the case of Guill et al. v. Paducah & Illinois Railroad Co. et al., 181 Ky. 494, 205 S. W. 580, this court held that where a party sues for damages, rescission of the contract, and seeks an injunction in the alternative pleas, and is awarded damages which he accepts, it will bar his right on appeal to have a reversal of the judgment appealed from on the ground that a rescission of the contract and the injunctive relief sought were denied. No more was held in that case than that the lot owners having sought either a rescission of the contract of purchase, or damages, or that an injunction be awarded preventing damages to the lots by reason of the construction of a railroad line through them, they could not obtain damages and accept the amount awarded and then insist on a rescission of the contract. That case is not in point. In the case of Joseph Goldberger Iron Co. v. Cincinnati

Iron & Steel Co., 153 Ky. 20, 154 S. W. 374, this court stated that the general rule is that the prosecution of one remedial right to judgment or decree, whether the judgment is for or against the plaintiff, is a decisive act which constitutes a conclusive election and bars the subsequent prosecution of inconsistent remedial rights. Undoubtedly the general rule is correctly stated in that opinion, but the court there found that the remedial rights were either not inconsistent, or that there had been no conclusive election because a suit on a note and also damages for conversion were authorized by that opinion.

In the case of Piersall v. Huber Manufacturing Co., 159 Ky. 338, 167 S. W. 144, 145, this court held that 'the buyer of personal property has the right of election to keep the property and sue for damages on the contract if its conditions have been broken by the seller, or to repudiate the contract and demand its rescission, but that he could not pursue both remedies. Where the party to the contract had successfully maintained a suit for the rescission of the contract, he could not thereafter bring a suit to recover damages for a breach of the contract. So it was held in that opinion. In that case suit was instituted for the cancellation of a contract, and for damages for the breach thereof. A motion to elect was entered, and the plaintiff elected to prosecute the action for a cancellation of the contract and dismissed for petition seeking to recover damages for a breach of the warranty. She succeeded in securing a cancellation of the contract, including a cancellation of the outstanding note for the purchase price, and judgment for the recovery of the amount which she had paid. An appeal was taken from the judgment and affirmed by this court. Thereafter she instituted a new suit to recover damages for the breach of the warranty. The subject-matter of the controversy was a traction engine. A demurrer was sustained to the petition, and she appealed. The court said: "As a general proposition it is well settled that, when a party seeks and obtains the cancellation of a contract upon the ground of fraud, he will not be allowed to maintain an action in damages for a breach of the conditions of the contract that on his motion was cancelled and set aside. The right to recover damages for a breach of the warranty in such a case must necessarily be rested upon the ground that there was a contract between the parties, and as a result of the breach of this contract the plaintiff

suffered damages. If there was no contract between the parties, it seems obvious that one of them could not maintain an action in damages for the breach of a contract that did not exist. Therefore, when the plaintiff in this case secured relief by disaffirming the contract, and upon the ground that in fact no contract was made, this was a waiver by her of the right to recover damages for a breach of the contract, and her cause of action asserted in the second paragraph of the first suit and in this suit were utterly inconsistent.''

It will be seen from this quotation and from consideration of the opinion in the case that the opinion does not sustain the contention of counsel for appellants. It was a suit to cancel a contract on the ground of fraud. When the contract was cancelled, that was equivalent to adjudging that there had never been a contract, and, of course, there could be no recovery of damages for the breach of a contract which never existed. Such is not the case before us. The lease contract was valid. The question of fraud is not one of the grounds for cancellation. By a process of reasoning it would seem that the case last cited might support the opposite contention. That is, that where there is a contract valid and existing, there may be a recovery for its breach, although a cancellation is sought on grounds other than fraud. In fact the court in that opinion said: ''There are, of course, many cases where consistent, concurrent remedies are allowed.''

The court then cited the case of Ross v. Sheldon (Ky.) 119 S. W. 225, 228, and distinguished it from the case under consideration. In that case Ross brought a suit against the lessees for a cancellation of the contract and to recover damages for its breach. There was a motion by the defendants to require Ross to elect whether he would prosecute his cause of action for the cancellation of the contract, or to recover damages for a breach of it. The motion was overruled. The Court of Appeals, in passing on the propriety of the action of the lower court, took occasion to say: ''Where a suit is brought to cancel a contract upon the sole ground that it was obtained by misrepresentation or fraud, or entered into by mistake, we do not think it would be proper to unite with this complaint in a separate paragraph an action for damages for a breach of the contract. The two claims would be totally inconsistent; the suit for cancellation proceeding upon the ground that no contract had

'been entered into, and the suit for damages upon the theory that an executed contract had been broken.''

Further discussing the point the court continued: "But we do not mean to hold that if in an action for rescission, upon the ground that no contract had been made, the plaintiff should fail, and it be legally determined that there was a contract, he might not in another proceeding recover such damages as he was entitled to for a breach of the contract. But, if a rescission is sought upon the ground that one of the parties has wholly failed to perform his part of the contract, we see no reason why an action for damages might not be united with an action for rescission. In such a case, if the plaintiff failed in his efforts to rescind the contract, he might recover for its violation; and so, if he succeeded in cancelling the contract, this fact would not defeat his right to recover damages for its breach.''

We have authority here in point. The appellants wholly failed to perform that part of the contract which was most material to appellees. They failed and refused to market the gas from a paying well. The ultimate purpose of the lease contract was to market oil or gas, or both, and this appellants, without excuse, wholly failed to do. The rule as announced in the case of Ross v. Sheldon, supra, appears to us sound. Where a contract is rescinded on the ground of fraud or mistake, or for any reason which renders the contract void ab initio, a suit seeking to rescind and to recover damages would contain inconsistent causes of action as there could be no damages if it should be adjudged that there was no contract. But in cases such as the one under consideration there was a contract. The institution of a suit at common law would not afford an adequate remedy. As has been pointed out, it is always difficult to establish the amount of damages sustained in cases such as this. Therefore a suit in equity to cancel the existing contract is allowable, but if the contract is canceled and the land returned to the lessors when the gas has escaped through the failure of appellants to perform their part of the contract, it can be readily seen that the return of the land does not make them whole. The damages caused by the escape of the gas accrued while the contract was in effect. A suit to cancel the contract for a failure on the part of appellants to perform it and to recover damages which had accrued prior to the time of its cancellation

are actions allowable in the same suit. It is true there is a dearth of authority on the question in this state. Many of the opinions without careful analysis would indicate that such causes of action are inconsistent, and an election to prosecute one would be a bar to the other. But when the opinions are carefully considered, the facts upon which they are based are distinguishable from the facts in this case.

13 C. J. p. 615, announces this rule relating to the abandonment of contracts: "Where one party to a contract abandons it and refuses further performance, the other party is entitled to rescind. He is not, however, bound to rescind, but may keep the contract alive and sue upon it for a breach, or he may adopt a middle course and treat the contract as at an end for the purposes of further performance, but as still alive for the purpose of adjusting the rights of the parties as to the breach."

The petition alleged as a ground for the cancellation of this contract that appellants abandoned it. That was a ground for the cancellation of the contract. Appellees may have elected to keep the contract alive and sue for damages from time to time but they adopted a middle course and treated the contract as at an end, which terminated their right to recover damages arising in the future and sought only an adjustment of the rights of the parties growing out of the breach.

It is insisted that the oil and gas lease which is the basis of this action was in fact an absolute grant of the oil and gas underlying the tract of land, and for that reason appellees are not entitled to recover. We do not follow the reasoning. If such were the case, a part of the consideration was the royalty for gas sold from the land, and undoubtedly appellees would have a right to recover for their part of the gas which ought to have been sold, but was not through the failure of appellants to perform the contract. If it were in fact an absolute grant, the lower court was without authority to cancel it. But that has been done and the judgment is final.

Judgment affirmed.