## Lawrence Oil Corporation v. Metcalfe.

(Decided December 4, 1931.)

E. B. ANDERSON, CARROLL E. BYRON, and W. P. SANDIDGE for appellant.

KIRK & BARTLETT, and CARY, MILLER & KIRK for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

Martha Metcalfe obtained a judgment by default against Lawrence Oil Corporation canceling the undeveloped portion of an oil and gas lease. This appeal by the defendant presents the single question whether the facts alleged in the petition are sufficient to support the judgment.

The facts alleged in the petition are these: The plaintiff is a widow, and owns a tract of ninety-four acres of land in Ohio county. On July 30, 1924, she executed to the Chicago Petroleum Syndicate an oil and gas lease upon the land. The syndicate assigned the lease to the

Chester Oil Company on November 23, 1927, and that company assigned it, on May 1, 1930, to the Lawrence Oil Corporation, which agreed to perform all the terms of the lease, and took possession under it. At that time there had been drilled on lands adjoining the plaintiff's land a number of oil wells from which oil had been marketed. Five of such wells were drilled within 200 feet of the boundary line of the plaintiff's land, at locations designated in the petition, but the distances between them does not appear. On June 10, 1930, the plaintiff served a written notice upon the defendant that five offset wells were due to be drilled upon plaintiff's land, pursuant to section 3766b-4c, Kentucky Statutes. Pursuant to the notice, the defendant went upon the land and drilled one of the offset wells, but declined and refused to drill the other four. Some of the wells in the adjoining land are drilled to what is known as the Jett sand, and some to the Barlow sand, and all have been producing oil in substantial quantities since they were drilled. After receiving the notice, the defendant drilled three other oil wells on the interior portion of plaintiff's land. but none within 600 feet of the lines, nor for offsets to producing wells on the adjoining lands. Oil was discovered in paying quantities in all of these wells. The plaintiff has twelve wells located upon her lands, all of which are producing oil in paying quantities, and there are a number of wells on the adjacent land producing oil in paying quantities, including four that are located within 200 feet of her boundary line. so that the actual presence of oil has been proven. By the nearby wells located within 200 feet of her lines on the adjacent lands oil is being drained from her land to her great irreparable damage, with the defendant's knowledge, and it has announced its intention not to drill the other four offset wells. By the wells that have been drilled on her lands 50 acres of her land has been fairly developed, but 44 acres of it has not been developed, and the defendant is negligently permitting the oil to be drained therefrom by the nearby wells located within 200 feet of her boundary lines, in violation of her rights. The 44 acres is thus described:

"Bounded on the North by the lands of A. F. Bellamy and Dr. Rogers, on the east by the lands of Dr. E. P. Rogers, on the West by the lands of A. F. Bellamy and on the south by the developed portion of the Martha E. Metcalfe land."

The lease was filed as a part of the petition. By it the lessee agreed: (1) To deliver to the credit of the lessor, in the pipe line, one-eighth of all oil produced and saved from the premises; (2) to pay the lessor $100 each year for the gas from each well where gas only is found, while the same is being marketed off the premises; (3) to begin a well on said premises within one year or pay a rental at the rate of 50 cents an acre for each year thereafter; (4) this lease shall be forfeited for failure to comply with the conditions of drilling or the payment of rentals provided herein, and for no other cause.

Section 3766b-4c, Kentucky Statutes, is in these words:

"That in the event of oil or gas being discovered in paying quantities on an adjoining leasehold and the products therefrom being taken out of ground and marketed and said well is within two hundred feet of another lessor's property line, then within three months after written notice has been given lessee to the effect that such oil or gas has commenced to be transported off and marketed from the said adjoining premises the lessee or lessees of the land lying within two hundred feet of the said wells shall begin to drill an offset to each of such wells so located, provided said offset wells to be drilled are not less than five hundred feet of each other, and upon his failure to so commence said offset well and complete same with diligence the said contract and lease shall automatically expire and become null and void. Provided this shall not apply to leases that are being operated, or on which wells are being drilled."

The above is section 4 of the act approved March 18, 1920, entitled:

"An Act to standardize, validate, define and enforce contracts and leases for lands leased for oil and gas purposes and to provide for how and when off-set wells shall be drilled." Acts 1920, p. 110, c. 24.

The circuit court, at the next term of court after the due service of summons, entered judgment by default adjudging that the lease be canceled and held for naught

as to the 44 acres of land, which is described in the judgment in the words of the petition above quoted.

The sufficiency of the petition to support the judgment is assailed upon the ground that the description of the undeveloped land is insufficient, that the portion of the act of 1920, above quoted, does not apply to leases upon which drilling is in progress or upon which wells are being operated, that the act is unconstitutional, that a portion of a lease may not be canceled if any part is developed, and that the facts alleged and admitted do not authorize the relief granted.

The description of the entire boundary of 94 acres leased is this:

"Bounded on the North by the land of Alonzo Bellamy.

"Bounded on the East by the land of Dr. Rogers.

"Bounded on the south by the land of Mary F. Norris.

"Bounded on the west by the land of Alfred Brown."

—including the land conveyed to lessor by a certain deed of record, to which specific reference was made.

The shape or coutour of the land is not explained or exhibited. The distance the land of each adjoining owner abuts or borders upon the leased land is not shown. The relative location of the wells is described, but the description is not very definite or certain, because it is by reference merely to the landowners and numbers of wells. It does appear, however, that twelve wells have been drilled upon the interior of a 50-acre portion of the lease, none of which are within 600 feet of the lines of adjacent owners upon which wells are also in operation.

The 44 acres is similarly described by naming the abutting owners on the north, east, and west, and it is clear that the undeveloped portion is distinct from the contiguous 50 acres upon which the twelve wells have been drilled. It is inferable from the petition that an off-set well may be due on the west or the north side adjoining A. F. Bellamy, upon whose lands a well had been drilled. The statement that it had been so located as to require two offset wells is but a conclusion of the pleader, which might or might not be derived from the

facts as they exist. It does not appear that any wells have been drilled on the land of Dr. Rogers on the east and obviously none will be needed to offset the wells upon the 50 acres of Mrs. Metcalfe where the twelve wells are in operation. It is not unlikely that the description of the land is very clear to the parties, for the petition avers that the location and boundaries are well known to the defendant, and clearly defined by reason of its location. It is sufficiently described to enable the lines to be located on the ground, and a description that may be made certain in that way is not fatally deficient. Casteel v. Pennington, 228 Ky. 206, 14 S. W. (2d) 753. Hence it cannot be said that the judgment is erroneous upon that ground.

The act of 1920 upon which the notice to drill further wells was predicated expressly provides that its terms shall not apply to leases that are being operated, or on which wells are being drilled. Appellee insists that the proviso only excepts out of the operation of the statute leases executed before the statute was passed, if then operated or a well was being drilled thereon. It was inapt and unnecessary for that purpose, for we have held that it did not apply at all to leases executed prior to its passage. Union Gas & Oil Co. v. Diles, 200 Ky. 188, 254 S. W. 205. The natural meaning of the proviso is that it is a limitation upon the whole section, and that the section was not intended to apply to leases that are being operated, or on which wells are being drilled at the time the proceeding is begun by giving the written notice provided for by the act. The act was addressed to leases wholly undeveloped, and was designed to excuse development while rentals were being paid as provided by the instrument, unless it became imperative to drill offsets to prevent drainage by robber wells near the boundaries of the lease. The rule is that the proviso "should be construed together with the enacting clause with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act." 36 Cyc. 1162. Whether additional wells should be drilled on leases that were operated would depend upon a number of circumstances, and to give the statute the effect urged by appellee would extend it beyond its apparent scope. It must be construed according to the fair meaning of the words used, and, so construed, it does not apply to the lease in question as it was then being operated.

It is insisted, nevertheless, that the statute is unconstitutional in so far as it infringes upon the judicial power of construing the covenants of contracts concerning oil and gas, and that it is arbitrary in fixing the distance oil or gas will drain, without reference to the actual facts of each particular case, which varies with the porosity of the sands and the pressure of the rocks. The act has been held invalid as to leases executed and causes of action arising before its adoption. Union Gas & Oil Co. v. Diles, 200 Ky. 188, 254 S. W. 205; Swiss Oil Corp. v. Howell, 199 Ky. 763, 251 S. W. 1007; Hunt v. Garvin, 190 Ky. 472, 227 S. W. 811; Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S. W. (2d) 486; Oil Fork Dev. Co. v. Huddleston, 202 Ky. 261, 259 S. W. 334; Maverick Oil & Gas Co. v. Howell, 193 Ky. 433, 237 S. W. 40.

The title has survived a challenge under section 51 of the Constitution. Kelley v. Hardwick, 228 Ky. 349, 14 S. W. (2d) 1098. And a federal court has held the act valid as a declaration of the public policy of the state respecting the subject-matter thereof. Roberts v. Atlantic Refining Co. (C. C. A.) 295 F. 16. In view of our conclusion, however, that the statute by its terms does not apply in any event to leases which have been drilled or which are being operated, we refrain from discussing or deciding the questions raised respecting its constitutionality.

It remains to determine whether the judgment may be sustained on general equitable principles. If the judgment is correct, and upon a sufficient pleading, it will not be reversed because the pleading proceeded upon an erroneous theory, or contained surplusage.

It cannot be doubted that a covenant is implied in oil and gas contracts like the one here involved to the effect that the lessee will protect the leased lands from drainage of the oil or gas through robber wells on adjacent lands. It results from necessity and reason, because of the nature of the contract and the characteristics of the subject-matter thereof. The courts, without exception, recognize the existence of such a covenant. The divergence in the decisions is upon the character and extent of the duty of protection against drainage.

Merrill, "Covenants Implied in Oil & Gas Leases," chapter 5, p. 164; Thornton on the Law or Oil & Gas (4th Ed.), sec. 98; Summers Oil & Gas, pp. 391, 416; Mills &

Willingham on the Law of Oil & Gas, sec. 111, p. 157; Kleppner v. Lemon, 176 Pa. 502, 35 A. 109; Brewster v. Lanyon Zinc Co. (C. C. A.), 140 F. 801; Jennings v. Southern Carbon Co., 73 W. Va. 215, 80 S. E. 368; Culbertson v. Iola Portland Cement Co., 87 Kan. 529, 125 P. 81, Ann. Cas. 1914A, 610; Grass v. Big Creek Dev. Co., 75 W. Va., 719, 84 S. E. 750, L. R. A. 1915E, 1075; Blair v. Clear Creek Oil & Gas Co., 148 Ark. 301, 230 S. W. 286, 19 A. L. R. 430; Carper v. United Fuel Gas Co., 78 W. Va. 433, 89 S. E. 12, L. R. A. 1917A, 171; Hughes v. Busseyville Oil & Gas Co., 180 Ky. 545, 203 S. W. 515; Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58; Union Gas & Oil Co. v. Diles, 200 Ky. 188, 254 S. W. 205; Carroll Oil & Gas Co. v. Skaggs, 231 Ky. 284, 21 S. W. (2d) 445.

The extent and measure of the covenant has been subjected to various tests, but the better rule is that both parties are bound by the standard of what is reasonably required by the exigencies of the particular case. Merrill, "Covenants Implied in Oil & Gas Leases," secs., 87, 88, pp. 217-219; Mills & Willingham, on the Law of Oil & Gas (4th Ed.), 149D; Swiss Oil Corporation v. Risner, 223 Ky. 397, 3 S. W. (2d) 777; Brewster v. Lanyon Zinc Co. (C. C. A.), 140 F. 801.

The intimations inconsistent with this conclusion in Union Gas & Oil Co. v. Diles, 200 Ky. 188, 254 S. W. 205, and the quotations from the case of Kellar v. Craig (C. C. A.), 126 F. 630, in that opinion, were made when this question was not presented or given exact consideration. The true rule is announced in the authorities cited above.

It is well settled that a neglected portion of a lease may be canceled, preserving all the rights of the lessee in the developed portion, and such cancellation is a proper, although not the exclusive remedy. Summers, Oil & Gas, p. 530; Implied Covenants in Oil & Gas Leases, Merrill, c. 7; White v. Green River Gas Co. (C .C. A), 8 F. (2d) 261; 40 C. J., p. 1093; Carroll Oil & Gas Co. v. Skaggs, 231 Ky. 284, 21 S. W. (2d) 445; Highfield Co. v. Kirk, 248 P. 19, 93 A. 815; Austin v. Ohio Fuel Co., 218 Ky. 310, 291 S. W. 386; Dinsmoor v. Combs, 177 Ky. 740, 198 S. W. 58.

But in this state we have a settled policy that reasonable demand must be made of the lessee for further

development. Dinsmoor v. Combs, supra; Hughes v. Busseyville Oil & Gas Co., supra.

The notice must be unequivocal and so certain and definite as to advise the lessee what is demanded and expected of him. Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S. W. (2d) 486. The notice and demand should be addressed to the situation existing at the time. Here the notice was given at a time when a certain condition prevailed. The lessee acted, apparently in good faith, and in accordance with an honest judgment, since the contrary is not alleged. He drilled some additional wells. A new situation was thus created, and, if further drilling is desired, a new demand should be made for the development of the precise portion of the land that remains undeveloped. Of course, the notice may be waived, and on a declaration by the lessee, or a showing of the fact, that it would not, in any event, drill upon the 44 acres, even if demand therefor be made in strict pursuance of the rule, the necessity for further opportunity to determine its attitude would be obviated. The petition avers that defendant announced an intention not to drill the other four offset wells demanded, but that is not enough to show that it would not, if proper demand was made, drill further on the 44 acres in question. The four offset wells demanded by the notice may not be necessary or proper, and the allegations in that respect are too uncertain to support a conclusion that such wells are essential for the proper protection of the lines, or for the adequate development of the remainder of the land. But the facts may be shown that would require further drilling on the 44 acres, or warrant a cancellation of the lease as to the undeveloped portion thereof.

If the plaintiff desires, the petition may be amended to present more fully the facts pertinent to a determination of the rights of the parties under the principles indicated in this opinion. Otherwise the petition should be dismissed without prejudice to the right of plaintiff.

The judgment is reversed for proceedings not inconsistent with this opinion.