**Russell SAPP et al., Appellants,**

**v.**

**Florence MASSEY et al., Appellees.**

Court of Appeals of Kentucky.

June 22, 1962.

Donan & Vick, Greenville, for appellants.

Jarvis & Cornette, Greenville, for appellees.

STANLEY, Commissioner.

H. J. Massey and wife, Florence, on March 1, 1951, executed an oil and gas lease of 58 acres to Fred Culpepper. One

producing well was started in 1954 and completed on June 29, 1956. This suit was instituted on September 30, 1957, by Florence Massey and her children, successors in title of the lessors, against Russell Sapp, et al., present owners of the lease. Upon the allegations of the complaint the plaintiffs prayed the court to adjudge 1) that the lease had expired by its own terms, 2) a forfeiture because of improper and inadequate development under the implied covenants of the lease, and 3) damages of $10,-000 for drainage by nearby wells. The answer raised the issues. Following a conference and hearing, a pre-trial order was entered reciting that "the sole issue to be determined shall be whether or not plaintiffs' lease, now held by the defendants, shall be forfeited for lack of reasonable development." The order expressly excluded from the case the question of termination of the lease and adjudged the plaintiffs not to be entitled to the damages claimed.

After much evidence had been heard orally and by depositions, the plaintiffs were permitted to file an amended complaint to make the pleadings conform to the proof. CR 15.02. This amendment was substantially the same as an amended complaint which had been tendered a few days after the entry of the pre-trial order and later withdrawn. The amended complaint repleaded a breach of the implied covenant to develop the lease and, in addition, alleged 1) that the defendants had further breached their duty by selling the oil from the one well below the market price to plaintiffs' damage of $441.47; 2) that the lease had been forfeited for lack of reasonable diligence and had remained "a burden and encumbrance" on the land to plaintiffs' damage of $1,000. The prayer was for recovery of those two items and further damage of $1,000 for failing to prevent drainage by drilling offset wells.

The judgment and Findings of Fact and Conclusions of Law, which were made a part of the judgment by reference "as though fully set out at length," use the terms "abandoned" and "forfeited" and "cancellation" and "forfeiture" in relation to the lease. The producing well and three acres of land around it, which area was particularly described, with necessary rights incident thereto, were excepted. That reservation, however, was adjudged "cancelled, set aside and held for naught and held forfeited without further process of law" in case the well should cease to be "commercially or profitably productive and no oil is pumped and/or marketed therefrom for a period of ninety days." The court further found and adjudged 1) that the plaintiffs had been damaged $441.47 by reason of the defendants' having sold the oil for less than they would have received had they sold it to another named company; 2) that plaintiffs had been "damaged to some extent through the failure of the defendants to drill offset wells" but the amount could not be arrived at except through speculation, so no judgment on that account was rendered; and 3) that plaintiffs had been damaged "by the lease being an encumbrance on said land, to what extent the court does not know," but it was at least $200, and that sum was adjudged.

By the provisions of the pre-trial order the court was limited to deciding only the issue of forfeiture of the lease. In dealing with pre-trial proceeding, CR 16 defines the purposes and character of the order to be entered and "limits the issues for trial to those not disposed of by admissions or agreements of counsel," and provides further "such order when entered controls the subsequent course of the action, unless modified at or before the trial to prevent manifest injustice."

In his work on the Kentucky Civil Rules of Practice and Procedure, Judge Clay comments, "The pre-trial order is most important because it controls the subsequent course of the action unless modified at or before the trial to prevent manifest injustice. This order shall recite the action taken at the conference, the pleading amendments allowed, and the agreements and admissions of the parties. The par-

ties are bound by the pre-trial order and its terms may not be contradicted." Clay, CR, p. 201. Berry v. Spokane, Portland & Seattle Ry. Co., D.C.Or., 2 F.R.D. 483, is cited as authority. The statement is fortified by other texts and cases construing the comparable Federal Rule 16, 28 U.S.C.A. 3 Ohlinger's Fed.Pct., Rule 16, Note 6; 3 Moore's Fed.Pct., Pars. 16, 19, 1620, pp. 1126 et seq.

It is said in 35B C.J.S. Federal Civil Procedure § 912, "If a party wishes to present other issues at the trial, he should ask for an amendment of the pre-trial order." For ready reference we quote the following from McCarthy v. Lerner Stores Corporation, D.C., 9 F.R.D. 31:

> "One of the chief purposes of pretrial procedure, and the principal usefulness of a pretrial order, is to formulate the issues to be litigated at the trial. The parties are bound by the pretrial order. They may not later inject an issue not raised at the pretrial conference. Otherwise the primary objective of pretrial procedure would be defeated.
>
> " * * * To say that parties are not bound by the pretrial order is a misunderstanding of the purpose and the office of pretrial.
>
> "No doubt situations may occasionally arise in which counsel discovers some vital new matter, after pretrial and before the trial. The pretrial order may then be amended to include the new issue. Application may be made to the Pretrial Court to amend the pretrial order.
>
> "If counsel waits until the trial, he is bound by the pretrial order, unless the trial court relieves him of the pretrial order to prevent manifest injustice. Of course, it is contemplated that this will be done only in exceptional cases, as otherwise the adverse party may be taken by surprise and in a proper case may become entitled to a

continuance and possibly a mistrial, if the case is tried before a jury."

■ The defendants never asked for a modification of the conclusive pre-trial order but proceeded notwithstanding to take proof on the eliminated issues and then were permitted to plead the same retroactively after having once withdrawn the tender of substantially the same amended complaint. Laying aside the questionable legal merits of the claims for damages—especially for the novel claim of liability of encumbering the land by an existing lease which the plaintiffs' predecessors had executed—and the claim of abandonment of the lease (which was never pleaded), we must hold that the judgment in relation to all issues except forfeiture was not authorized.

We turn to the question of the sufficiency of the evidence as a matter of fact and of law to establish the right of forfeiture of the lease for breach of the implied obligation of the lessee to proceed with exploration and full development of the leasehold with reasonable diligence. The question of what that may be is often a difficult one, for it involves the opinions and judgments of the respective parties, which often clash, and, in a large degree reasonable discretion on the part of the lessee. We may say that the delay of thirty months in completing the one producing well seems to have been justified by unavoidable circumstances. At the time of the trial there had been drilled on the adjacent or nearby land thirty producing wells and twenty-two dry holes. If it be conceded that the lessees had not exercised proper diligence and operation under the circumstances, there remains for determination as an equally controlling factor the matter of the lessors' demand to further develop.

■ It is well settled law of this jurisdiction that where the right to have a lease forfeited for breach of the implied covenant to develop the property diligently

and prudently is asserted, the lessor must have put the lessee in default by making definite and unequivocal demand of him that he do so within a reasonable time, or by giving that character of notice that compliance with the implied covenant is required. That is a condition precedent to the maintenance of a suit to forfeit, and the burden is upon the lessor to prove it. Among the cases so holding are Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602, 99 S.W. 668; Leeper Oil Co. v. Rowland, 239 Ky. 295, 39 S.W.2d 486; Lawrence Oil Corp. v. Metcalfe, 241 Ky. 353, 43 S.W.2d 986; Young v. Dunn, 302 Ky. 232, 194 S.W.2d 378; B. & B. Oil Co. v. Lane, Ky., 249 S.W.2d 705; Cameron v. Lebow, Ky., 338 S.W.2d 399.

But we have recognized that notice to develop the property further may be regarded as waived by the lessee's declaration that he would not drill even if adequate demand were made. Lawrence Oil Corp. v. Metcalfe, 241 Ky. 353, 43 S.W.2d 986; American Wholesale Corp. v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498.

We look to the evidence of demand and waiver.

■ The defendant, Russell Sapp, was the agent of his co-lessees. The only evidence of notice or demand, as the trial court found, was that Eura E. Massey, son of the original lessors, had assisted his parents in managing their land, and when he had only a family interest, had discussed the matter of operations with Sapp and complained because further wells had not been drilled. Certainly that was not a legal notice or demand. But the court found that such complaints had elicited statements from Sapp to the effect that he had no intention of drilling another well. On a careful reading and rereading of Massey's evidence we find only that he testified that "a time or two" he had discussed with Sapp the development of the lease, and on one occasion, in June or July, 1956, Sapp had said, "If he ever got the money to drill

a hole, he would drill the well." The first well was completed about that time. Obviously that did not constitute a waiver.

When Sapp was called to testify as if on cross-examination, there was elicited from him, in connection with his statements that he considered the property reasonably developed and had never been called upon to drill another well, that he would not put any more money in another well. In testifying as a witness for himself and his co-defendants, he stated, in regard to the conversation with Massey in June or July, 1956, that Massey's mother and sister were present, and he told them he wanted to see how the production of the first well turned out before drilling another, and the sister (who, like Massey, had then only a family interest) responded, "She didn't care whether there was any more wells drilled on the old farm." Sapp further testified that if notice had been served upon him to drill another well prior to the lawsuit, he and his associates would have done something about further development, but they would not do so "at the present time" or while the suit was pending. He testified that "at the present time further development was not warranted" but that in the future it is possible further drilling would be warranted. We cannot read into this evidence any waiver of notice or demand prior to the litigation. We are of opinion the judgment of forfeiture is erroneous.

The court overruled the defendants' motion to change his findings in some respects as being erroneous and to add other findings. They also filed a motion for a new trial and for judgment notwithstanding the verdict. CR 50.02; 59.01. The court had found the value of the lease, less the exception of three acres and the producing well, to be $1,200 or $1,500. The defendants moved that the amount in controversy be fixed as at least $2,500 and that was denied; hence, the case is before us on a motion for an appeal under the rule prevailing before the amendment of KRS 21.-080.

The motion for an appeal is sustained, and appeal is granted, and the judgment is reversed with directions to enter another dismissing the complaint as amended.

Reversed.