Bruce KING et al., Appellants,

v.

HOLLY OIL & GAS CORPORATION, Appellee.

Court of Appeals of Kentucky.

April 13, 1966.

Daniel Brock, Brock & Brock, Lexington, for appellants.

Rose & Short, Beattyville, for appellee.

CLAY, Commissioner.

This suit was brought by appellants to recover damages for appellee's breach of contract in failing to develop production under ten oil and gas leases on land located in Lee County. It was tried without a jury and, while the trial court found a breach of contract, it awarded appellants only nominal damages. Appellants contend they were entitled to substantial damages and by cross-appeal appellee contends there was no breach of contract.

In May 1957, appellants assigned to Dearborn Oil and Gas Corporation a working interest in the leases. On December 30, 1957, appellants and Dearborn executed the contract which is the basis of this lawsuit. Under that agreement Dearborn covenanted to develop a pilot water-flood project to increase production under these leases. The basic time limit for performance was two years, but this was subject to two qualifications:

(1) If operations had not been commenced "upon the expiration of said two (2) year period" (or as otherwise extended), appellants could make written demand that the operations "be commenced forthwith" and Dearborn was given nine months thereafter to comply before appellants could require a reassignment of the leasehold estates.

(2) It appearing that there were serious title difficulties, the time limit would be suspended for the period necessary to clear the titles, which Dearborn agreed to use diligence to accomplish.

Approximately eight months later Dearborn assigned its interest in the leasehold estates to the appellee. Neither Dearborn nor appellee took any steps at any time to clear up the title difficulties (which the parties agreed existed) or to commence

any water-flooding operations. It may be noted here that the rental payments provided in the leases were not paid and at some unspecified time, according to appellants' brief, the leases expired.

We will first take up the question of breach of contract. Appellee contends that if the contract was breached, its assignor Dearborn was the guilty party. We cannot understand this argument in view of the fact that the assignment from Dearborn to appellee, executed eight months after the December 30, 1957 agreement, recited that it was "expressly subject to the terms, provisions and conditions" of such agreement. In acquiring the rights under that agreement, appellee clearly assumed the obligations thereunder. Since it is undenied that appellee failed to perform in any respect, the trial court correctly found a breach of contract.

The other question in the case is whether appellants were entitled to substantial damages. They rely on Carroll Gas & Oil Co. v. Skaggs, 231 Ky. 284, 21 S.W.2d 445; Midland Gas Corporation v. Reffitt, 286 Ky. 11, 149 S.W.2d 537; and North Star Company v. Howard, Ky., 341 S.W.2d 251. Appellants candidly recognize they were faced with serious problems in attempting to prove damages.

The first difficulty, which neither the parties nor the court alluded to but which has a bearing on the court's conclusion that damages were speculative, is that it is impossible to determine from this record just *when* the contract was breached. As before mentioned, the December 30 agreement contemplated two automatic time extensions beyond the two-year period. One was the time necessary to clear titles, and the other was the extension of an additional nine months after written notice. A reasonable time within which these titles should have been cleared is not established by appellants. Actually this was not accomplished until February 1962, more than four years after the December 30

agreement. On the other hand, the fact is that appellants did not give any written notice to commence operations forthwith *after* the expiration of the two-year period, so it is arguable the time had been extended indefinitely.

With these difficulties in view, the time as of which this contract was breached was not proven. Such being the case, the evidence of prospective production, after the breach, becomes highly speculative. That was the finding of the trial court.

Appellants introduced several witnesses who undertook to estimate the possible production under these leases by water-flooding methods. They based their opinions upon such things as "core analysis", one of which was made as far back as 1954, and other factors. Estimates ranged from 4,000 to 8,000 barrels per acre (apparently over a ten-year period). The highly speculative character of this testimony is apparent when we consider that the success of a water-flooding process itself is questionable. The wording of the agreement in describing the process as a "pilot" one, characterized it as experimental. One of appellants' own witnesses, who had subsequently purchased the leases here involved, testified: "All I can say is that I hope it will water-flood, I can't say it will". While some witnesses testified they thought water-flooding of this land would be successful, other evidence indicated the many risks and uncertainties involved.

The speculative character of the water-flooding method in this area simply compounds the speculative nature of production estimates. In the cases cited by appellants we find such things as a previously mined coal deposit or a producing well. There was some degree of certainty as to what reasonably might be expected in the way of future production by the continuation of the same extraction process. Here we are unable to base estimates on past production (without water-flooding) and we have a change in the extraction process.

Appellants are critical of the court's opinion because the trial judge apparently drew on his personal knowledge of conditions in the Lee County oil fields. Assuming this criticism might to some extent be justified, we are of the opinion that the evidence in this case fails to show with reasonable certainty any basis upon which a recovery of substantial damages could be based. When we consider the fact that the time of the breach of contract was not established, the changing conditions, the experimental nature of the water-flooding process, and the character of the opinion testimony, it is evident to us that the claim for substantial damages rests upon pure speculation.

The judgment is affirmed.