# Hoover et al. v. Dudley et al.

(Decided February 19, 1929.)

EDWARD L. ALLEN, A. J. MAY, JOSEPH D. HARKINS and TURNER & CREAL for appellants.

J. C. HOPKINS and JAMES & HOBSON for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

On August 16, 1913, Louisa Hoover and husband conveyed to Daisy Dudley a tract of 100 acres in Floyd county. Louisa Hoover did not own the coal under the land, as her vendor had excluded from the conveyance all the minerals with the exception of the oil and gas; it appearing that he had theretofore conveyed such mineral to another. The exception in the Hoover deed to Mrs. Dudley was in the language: "Excluding the, all the mineral on said land, excluding all the timber that belongs to Epperson Hayes."

On January 2, 1915, Daisy Dudley and husband executed an oil and gas lease on this land, which came into the ownership of the Keystone Gas Company on February 1, 1917. There being some doubt whether Mrs. Dudley owned the oil and gas by reason of the exception contained in her deed from Louisa Hoover, on April 20, 1921, at the instance, as it would appear, of the Keystone Gas Company, Ballard Dudley, husband of Daisy Dudley, went to the husband of Louisa Hoover, and, according to the latter's version, asked him to make a new deed to take the place of the original deed of August 16, 1913, saying that it had been lost. The Hoovers agreed to execute a new deed. According to Dudley's version, he stated to Hoover that there was some doubt about the construction of the original deed, and, as it had become torn, he wanted a new deed to remove the doubt and at the same time replace the torn instrument. He says Hoover readily agreed that it was the original intention to convey the gas and oil rights along with the surface. Later in the day Dudley and some representative of the Keystone Gas Company went to the Hoover house, and Louisa Hoover and her husband signed the new deed. The Hoovers say it was not read over to them, and its contents were misrepresented. Dudley claims that it was read, and that they knew it contained a clause referring to the doubtful construction of the original deed and clarifying it by making a specific conveyance of oil and gas. A few days later, Dudley returned with a deputy county court clerk to take the acknowledgments of Hoover and his wife. Hoover claims that he then read the deed and saw that it conveyed the oil and gas contrary to his intention, and he thereupon ran a line through the names of his wife and himself and refused to acknowledge the deed.

This paper was, however, proved by the oaths of two witnesses who saw Hoover and his wife sign their names and it was placed on record. Within a few days thereafter Louisa Hoover and her husband filed a suit in the Floyd circuit court seeking to have this deed set aside, and asking that their title to the oil and gas be quieted. Mrs. Dudley was duly served with process on June 3, 1921, and employed Hon. J. C. Hopkins to represent her. On August 1, 1921, Mr. Hopkins entered a motion in the action and filed a demurrer to the petition. These being overruled, by orders of court the defendant was given until October 18, 1921, in which to file answer. On October 19, 1921, a judgment was entered reciting in detail

the proceedings, and, that case having been submitted upon the pleadings and exhibits without answer being filed, judgment was rendered against Daisy Dudley setting aside the deed of April 20, 1921, and adjudging that Louisa Hoover was the owner of the gas and oil rights in the 100 acres.

It appears that on June 6, 1921, while this action was pending, Louisa Hoover and her husband executed a lease to the Kentucky Coke Company of the oil and gas, and granting certain other rights incident to the production thereof, in the 100-acre tract of land. And a month before judgment was entered, to wit, on September 19, 1921, Daisy Dudley executed a contract with the Kentucky Coke Company in which it is recited that, whereas the company under its lease from the Hoovers had acquired certain rights of way, privileges, and easements in and over the land for the production of oil and gas and was about to enter thereon for the purpose of operations under its lease from the Hoovers, she accepted and agreed to accept $300 a year in advance for each well drilled upon the property and the right to use gas for heating and lighting two dwelling houses as full payment and satisfaction of damages by reason of such entrance upon her property.

Some time during the pendency of this action, suit was filed in the United States District Court for the Eastern District of Kentucky by the Keystone Gas Company lessee of the Dudleys, against the Kentucky Coke Company, lessee of the Hoovers, to have determined the ownership of the oil and gas rights in this land. Neither the Dudleys nor Hoovers were made parties to that suit; nor were these companies made parties to the action in the Floyd circuit court. The District Court rendered judgment in favor of the Keystone Gas Company, and, upon an appeal to the United States Circuit Court of Appeals, that judgment was affirmed on February 15, 1924, as reported in the opinion of Kentucky Coke Co. v. Keystone Gas Co. (C. C. A.) 296 F. 320. A writ of certiorari was denied by the Supreme Court. 266 U. S. 605, 45 S. Ct. 92, 69 L. Ed. 464.

After the decision of the United States Circuit Court of Appeals, to wit, on March 14, 1924, a suit was instituted by Daisy Dudley against Louisa Hoover seeking to have set aside the judgment rendered on October 19, 1921, "for fraud practiced by the successful party in obtaining the judgment"; that is, under subsection 4 of

section 518 of the Code. The petition recites the substance of the proceedings above stated, and alleges:

That, after the filing of the suit, she employed an attorney to make defense for her, but, before her attorney had prepared or filed her answer, "the said Melvin Hoover and Louisa Hoover, acting jointly and in conjunction with the agents, employees and representatives of the Kentucky Coke Company, which company was then claiming to be the owners of an oil and gas lease upon the property hereinabove described wrongfully, fraudulently, collusively and unlawfully, represented to this plaintiff that it was a waste of time and money for her to make any defense to said cause of action for the reason that the litigation was between the companies and that regardless of whether she made any defense or not, her title to the oil and gas and the rentals arising therefrom would not be affected and this plaintiff being unlearned was thereby induced to not make any defense to the claim of the Hoovers in that litigation.

> "Plaintiff says that she relied upon the advice and representations of the said Hoovers and the agents, representatives and employees of the said Kentucky Coke Company, all of whom she has since learned were working together at the time in an effort to acquire a title to said oil and gas and aid the Kentucky Coke Company in sustaining its claim of title thereto by reason of an oil and gas lease executed unto it by the said Hoovers."

She alleged that but for the "fraud, collusiveness and overreaching" on the part of these parties she would have made her defense to the original action. The allegations of the petition being traversed, proof was taken, and upon the consolidation of this independent suit with the original action and the submission of the consolidated case, the court sustained the prayer of the petition for a new trial, and set aside the original judgment, and adjudged that Daisy Dudley was the owner of the gas and oil under the tract of land involved. From that judgment this appeal is prosecuted.

Daisy Dudley testified that W. S. Martin and Tom Higgins came to see her two or three times, and told her that she would get pay whether she won or lost this suit, and advised her to let the two companies fight it out, but, after she had given the Kentucky Coke Company the contract above referred to, they said nothing more to her

114

about it. When Mr. Hopkins came to her home to have her verify the answer which he had prepared, Martin was there, and advised her not to sign anything. She testified that neither of the Hoovers ever said anything to her about the suit or its defense, and that Martin and Higgins never at any time indicated that they were acting for the Hoovers, but told her they were acting for the Kentucky Coke Company and for her own best interest. Her husband, Ballard Dudley, gave his deposition in the case, exceptions to which were overruled by the court. It appears that he was the active agent of his wife, and attended to all of her business affairs, and she merely held the title to the land. He says that the original suit was abandoned because of the statements made by Martin and Higgins, that neither of them ever claimed to be representing the Hoovers, and that the Hoovers never said anything to him about abandoning the defense. Louisa Hoover and her husband also testified that they never authorized Martin or Higgins to represent them, and that they did nothing whatever to cause Daisy Dudley to abandon her defense to the original suit. W. S. Martin testified that he had known all of these parties all of his life, and says that he did advise the Dudleys not to make any defense and to keep out of the fight and let the companies law it out, and did advise Mrs. Dudley not to sign the answer prepared by her lawyer. He says that he was then working for the Kentucky Coke Company and was interested in having it hold the lease under Hoover, but that he was likewise interested in the welfare of the Dudleys, claiming close friendship with them. He was instrumental in securing the contract whereby the Kentucky Coke Company had agreed to pay the Dudleys $300 a year for each well coming in on the tract. He says that Dudley and his wife were as intelligent as the average citizens of the community and were able to take care of their affairs. He is rather evasive when it comes to testifying as to whether he had an understanding with the Hoovers as to advising the Dudleys not to defend the suit. These evasive answers of Martin, the alleged agent, is all the evidence there is tending to show any effort on the part of the plaintiffs in the original action to secure an abandonment of the defense by Daisy Dudley. While the lessee companies indirectly had great interest in the outcome of the suit, the Hoovers and Dudleys were vitally concerned as to who was entitled to the royalties. That was the real issue as between them, as it is on this appeal.

While it appears that there were close and friendly relations existing between the Hoovers and the representatives of the Kentucky Coke Company, the evidence discloses that Martin at least was just as close to the Dudleys. The evidence fails to establish any conspiracy existing between the Hoovers and the Kentucky Coke Company or its agents to prevent a defense being made to the suit.

Mrs. Dudley knew exactly what she was doing, namely, disregarding the advice of her counsel and following that of Martin, undoubtedly feeling secure no matter which way the litigation ended, having the contract to receive $300 a year per well from one, and a royalty contract with the other. If there was any conspiracy or collusion to prevent a defense to the action, Mrs. Dudley and her husband freely chose to follow the advice of those involved in the conspiracy. Though it may have developed afterward that she had made a mistake or error in judgment, her day in court had passed, and it was too late three years thereafter to retract. The successful party in the original action was not the Kentucky Coke Company, but Louisa Hoover. The coke company was not a party to the suit, and its rights were not affected. As is stated in the opinion of the federal court, namely: "The opinion herein expressed in no wise affects the rights of the parties as determined in the case in the state court above mentioned. That was a suit between Louisa Hoover and Daisy Dudley. The rights of the parties as determined in that suit in no wise affected questions presented here, except as to the proper one to whom payment should be made as provided in the lease from Daisy Dudley to Keystone Gas Company."

If Martin, as the representative of the Kentucky Coke Company, wrongfully induced Mrs. Dudley not to make a defense in order to defeat the rights of the Keystone Gas Company under its lease from the Dudleys, and committed a fraud against that company, then it would appear that Daisy Dudley and her husband knowingly became participants in the fraud. Therefore her cause of action based thereon is not available. Greene v. Fitzpatrick. 220 Ky. 590, 295 S. W. 896.

Mrs. Dudley chose to disregard the advice of her counsel and to accept that of a friend, or at least whom she considered her friend, and whom she was bound to know under the circumstances was an employee of, and interested in, the company seeking an advantage over her

lessee. Martin may have given to her his best opinion as to the legal effect of the litigation on her rights, but neither good nor bad advice, whether it be of a lawyer or a layman, is a ground for setting aside a judgment. Mouser v. Harmon, 96 Ky. 591, 29 S. W. 448, 16 Ky. Law Rep. 651.

As to whether or not Mrs. Dudley had a meritorious defense and might have defeated the original suit and obtained a decree declaring that she owned the oil and gas under her land (as the federal court determined in so far as it affected her lessee), that may not be considered on the issue as to her right to have the judgment set aside, for a new trial sought in this manner must be upon grounds and facts extrinsic and collateral to matters in the original record. If the grounds appear in the record of the original action, the proper remedy is by an appeal from that judgment. McGuire v. Mishawaka Woolen Mills, 218 Ky. 530, 291 S. W. 747.

The chancellor therefore erred in sustaining the prayer of the petition for a new trial. This, of course, makes unnecessary a consideration of the original case, for the judgment of October 19, 1921, must be reinstated.

The judgment is reversed for proceedings consistent with this opinion.