Roy F. McMAHAN et al., Appellants,

v.

Paul BOGGESS et al., Appellees.

Court of Appeals of Kentucky.

Feb. 15, 1957.

Rehearing Denied June 21, 1957.

Robert E. Humphreys, Jr., Humphreys, Jones, Beard & Connor, Owensboro, for appellants.

Ridley Sandidge, Byron, Sandidge & Holbrook, Owensboro, for appellees.

CLAY, Commissioner.

This suit was brought by appellee lessors to cancel an oil and gas lease upon 314 acres of land in Muhlenberg County, executed in March 1950. The Chancellor granted the relief sought, excepting 10 acres immediately surrounding a well that had been drilled by the lessees.

The lease was for a primary term of five years and for so long thereafter as gas or oil was produced. It required the lessees to commence drilling within one year or pay a delay rental of $1 per acre. The lessees promptly drilled an oil well, completing it in October 1950. The yield from this well averaged approximately four barrels a day for several years.

No other wells have been drilled on the leased property. In 1953, 1954 and 1955 the lessors notified the lessees that unless further development of the lease was com-menced cancellation of the lease would be sought. The lessees made two abortive attempts to initiate new drilling, but apparently one of the lessees was unable or unwilling to contribute his share of the cost.

It is first contended by the lessees that since they had the option of paying delay rental for a term of five years, it was not intended by the parties that development of the property should be expedited. However, it is recognized in Kentucky that in leases of this nature there is an implied obligation to develop the leasehold in good faith and with reasonable diligence. Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602, 99 S.W. 668; Keystone Gas Co. v. Salisbury, 192 Ky. 643, 234 S.W. 290; Maverick Oil & Gas Co. v. Howell, 193 Ky. 433, 237 S.W. 40; Young v. Thompson, 194 Ky. 192, 238 S.W. 387. As a matter of fact, the lessees in their brief acknowledge this is the governing rule.

It is argued, however, that under all the circumstances there was not unreasonable delay. It is pointed out that the well drilled in October 1950 cost approximately $22,000, and that only $7,000 has been realized from its production. It is said that in view of this minimum production and the initial cost of the drilling the lessees were not required to risk their capital in further immediate development.

The evidence introduced by the lessors was that the area of which this lease is a part has been for some years a producing area. The well was drilled in the southwest corner of the lease and other wells drilled in surrounding territory indicated that development of the lease in the northeast direction should be productive. Two geologists testified that the prospects of commercial production would justify the drilling of additional wells on this lease. In addition, one of the lessees testified he considered this lease a valuable one because of the possibility of profitable development. The evidence established that the

lessees had failed to fufill their obligations to the lessors.

█ It is further contended by the lessees that since there was no proof of fraud or bad faith on their part, they were the sole judges of whether or not the productiveness of the property was sufficient to require further development of the lease. This doctrine is not the law of Kentucky. A lessee under a lease of this sort owes a duty of diligence which would be reasonably expected of an operator of ordinary prudence, having due regard for both the interest of the lessee and the interest of the lessor. American Wholesale Corporation v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S.W.2d 498; Gregory v. Sohio Petroleum Co., Ky., 261 S.W.2d 623. See also Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801.

█ There was abundant proof in this record that due diligence by the lessees required further development of this lease. This is particularly true in view of the activity in the surrounding area and the notices received from the lessors. A close question of fact might have been presented in the case had the lessees introduced any evidence to support the contention that they had acted in good faith and with due diligence. They introduced no evidence. The Chancellor, in his excellent opinion, carefully analyzed all of the material circumstances which shed light on the prospects of this lease and the necessity for expediting its development. His findings of fact accord with the almost overwhelming weight of the evidence.

█ The lessees take the alternate position that instead of declaring a forfeiture the court should permit them a reasonable time to further develop this lease. While such a decree would be authorized under proper circumstances, there are several reasons why the lessees are not entitled to that relief in the present case.

In the first place, they have unreasonably delayed development for more than five years. The evidence shows that one of the lessees is apparently unwilling to expend further sums for development. As urged by the lessors, there is more than a suggestion in this record that the lessees have abandoned this lease. Secondly, there is no assurance that the lessees are either willing or able to further develop this lease within a reasonable time or at any time. Finally, the court should be extremely cautious about going into the oil business. Certainly the facts of this case do not justify the extraordinary supervision that would be required of a court.

We are of the opinion that the Chancellor correctly decided all of the issues presented.

The judgment is affirmed.