*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0342P (6th Cir.)
File Name: 01a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

MARGARET HAYES,
Administratrix of Louisa
Hoover and Melvin Hoover,
*Plaintiff,*

WANDA FAYE RIDGE, et al.,
*Plaintiffs-Appellants,*

*v.*

EQUITABLE ENERGY
RESOURCES COMPANY,
*Defendant-Appellee,*

KENTUCKY WEST VIRGINIA
GAS COMPANY, LLC.,
*Defendant.*

No. 00-5201

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 98-00332—Joseph M. Hood, District Judge.

Argued: August 2, 2001

Decided and Filed: September 26, 2001

1

Before:  CLAY and GILMAN, Circuit Judges; WISEMAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Todd B. Portune, COHEN, TODD, KITE & STANFORD, Cincinnati, Ohio, for Appellants.  Wayne F. Collier, KINKEAD & STILZ, Lexington, Kentucky, for Appellee.  **ON BRIEF:**  Todd B. Portune, COHEN, TODD, KITE & STANFORD, Cincinnati, Ohio, for Appellants.  Wayne F. Collier, Shelby C. Kinkead, Jr., KINKEAD & STILZ, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

   CLAY, Circuit Judge.  In this action which was removed pursuant to diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441 *et seq.*, Plaintiffs, Margaret Hayes, *et al.*, appeal from the district court's order awarding Defendant, Equitable Production Company ("Equitable"), f/k/a Equitable Energy Resources Company, summary judgment on Plaintiffs' Kentucky state law claims of breach of contract and trespass, in connection with performance under an oil and gas lease of property located in Kentucky.  We **AFFIRM** the district court's order.

_____

   [*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

## BACKGROUND

### Procedural History

On June 26, 1998, the Estate of Louisa and Melvin Hoover, Margaret Hayes, administratrix ("the Estate"), the original Plaintiff in this case, filed its complaint against Equitable in Kentucky state court, which Equitable then removed to federal court. The original complaint named several parties as defendants, including Equitable, and sought damages of royalties and gross values of minerals extracted from several wells under an oil and gas lease ("the Lease"), originally executed on June 6, 1921, and under which Equitable is the current lessee. The original complaint also sought punitive damages in connection with the defendants' alleged misconduct.

On August 3, 1998, Equitable moved to dismiss the original complaint, pursuant to Federal Rules of Civil Procedure 12(b), 12(c), and 56, on, among other grounds, the Estate's failure to state a claim. The Estate replied to Equitable's motion, claiming that the Estate had alleged sufficient facts to state a claim under Rule 12(b), and, alternatively, that material questions of fact existed which precluded an award of summary judgment to Equitable under Rule 56.

The Estate twice amended its complaint, joining several parties as plaintiffs, (the "Hoover Heirs"), all individuals identifying themselves as descendants of Louisa and Melvin Hoover, who obtained title to the oil and gas estates at issue in April of 1911. The Estate also dismissed all corporate defendants aside from Equitable, while adding individual defendants who were also heirs of the Hoover estate. Many of the individual defendants filed a cross-claim against Equitable and certain Hoover Heirs, raising claims parallel to those raised in the second amended complaint. On August 27, 1999, Equitable moved to dismiss the second amended complaint and cross-claim under Rules 12(b), 12(c), and 56.

On October 21, 1999, the district court entered an order granting Equitable's motion to dismiss. The court reached its decision on the following grounds: (1) Equitable did not breach the Lease by withholding royalties due unknown lessors because Equitable was entitled to verify that the royalties were paid to the true owners and was entitled to protect itself from multiple liability; and (2) Plaintiffs' claims regarding Equitable's failure to develop the Lease, and failure to market oil and gas, were unavailing because such implied covenants did not apply to a flat-rate lease. The court also found that the appointment of Margaret Hayes as administratrix of the Estate was contrary to Kentucky law, and that Hayes could only represent herself in the action.

Although the district court characterized Plaintiffs' breach of contract claims in terms of failure "to state facts upon which relief may be granted," the court's ultimate conclusion stated that Plaintiffs had presented "no claim upon which to terminate the [L]ease . . . [that] [n]o genuine issue of material fact exists in this matter, and summary judgment is proper pursuant to Fed. R. Civ. P. 56." (J.A. at 600-01.) The district court then ordered Equitable to deposit with the court all royalty payments held in escrow since 1992 for the Lease, ultimately to be issued to the properly identified Hoover Heirs. On December 3, 1999, the court ordered that the royalties be invested in the Court Registry System.

On November 3, 1999, Plaintiffs sought relief from the October 21, 1999 order pursuant to Rule 60(b), and moved to stay the execution of the order pursuant to Rule 62(b). Plaintiffs argued that the district court's decision under Rule 56 should have been deferred until Plaintiffs were given an opportunity to respond to Equitable's August 27, 1999 motion to dismiss and present additional supporting evidence for their claims. On December 14, 1999, the district court stayed execution of the October 21, 1999 order and allowed Plaintiffs until December 30, 1999, to file a response to Equitable's motion to dismiss. On December 30, 1999, Plaintiffs filed their response, attaching fourteen exhibits. On

motion to dismiss to a motion for summary judgment, and that Equitable met its burden to show satisfaction of the amount in controversy requirement. Accordingly, we **AFFIRM** the district court order.

Plaintiffs at the time of removal – i.e., the damages sought by Plaintiffs in their original complaint.

Significantly, this Court found removal to be proper in *Rogers* even though the plaintiff had alleged an amount in controversy below the jurisdictional amount, and even though the plaintiff had stipulated that her damages were under the required amount in controversy. *Rogers*, 230 F.3d at 871. Conversely, in this case, Plaintiffs have not alleged any specific amount to be in controversy, and at oral argument Plaintiffs expressly refused to stipulate to a damages amount falling under the amount in controversy requirement.[1]

Although the defendant in *Rogers* relied on the plaintiff's sworn responses to discovery requests, which stated that her amount of damages would exceed $447,000, *see id.*, we do not find any less reasonable Equitable's reliance on the damages sought by Plaintiffs in this case – royalties and gross values of minerals extracted from four separate wells, two of which date back to 1941, in addition to punitive damages. Plaintiffs in this case are unwilling to make concessions that would nevertheless be insufficient under *Rogers* to oust this Court of jurisdiction on amount in controversy grounds. Accordingly, under *Rogers*, Equitable has met its burden of demonstrating satisfaction of the amount in controversy requirement for diversity jurisdiction.

## CONCLUSION

We find that no genuine issue of fact exists as to Plaintiffs' power to terminate the Lease under Kentucky law. We also find that the district court did not abuse its discretion when denying Plaintiffs' discovery request and when converting the

---

[1] Plaintiffs' actions in this case are also distinguishable from *Cole*, where the plaintiff had stipulated to an amount of damages falling under the amount in controversy requirement, on which the district court expressly relied when remanding the case to state court. *Cole*, 728 F. Supp. at 1308.

January 13, 2000, the court denied Plaintiffs' motion for relief from the October 21, 1999 order, finding that Plaintiffs' response contained no additional information. Plaintiffs now appeal.

On July 3 and August 23, 2000, Equitable filed motions to dismiss Woodrow Hoover, James Allen Hoover, Gary Edward Hoover, and Margaret Hayes as administratrix of the Estate of Melvin and Louisa Hoover, as parties to Plaintiffs' appeal. This Court thereafter granted Equitable's motions. Margaret Hayes continues to represent herself as a plaintiff in this action.

### Substantive History

In April of 1911, Louisa Hoover, wife of Melvin Hoover, obtained title to the surface and oil and gas estates at issue in this case. In August of 1913, the Hoovers conveyed the property to Daisy Dudley, apparently reserving the oil and gas rights to themselves, and ultimately obtaining those rights in a 1921 decision by the Floyd Circuit Court in Kentucky, which was later set aside, but ultimately reinstated by the Kentucky Court of Appeals. *Hoover v. Dudley*, 14 S.W.2d 410 (Ky. Ct. App. 1929).

On June 6, 1921, the Hoovers executed the Lease with the Kentucky Coal and Coke Company, a predecessor in interest to Equitable. The Hoovers then conveyed a one-half interest in the oil and gas estate to third parties in August of 1928 without reserving any of the royalties from the existing oil and gas lease.

Kentucky West Virginia Gas Company ("Kentucky Gas") acquired title to both the Dudley and Hoover leaseholds on December 1, 1927, following years of litigation among the Hoovers, Dudleys, and Keystone Gas Company, to whom the Dudleys had granted a lease interest. Kentucky Gas then paid royalties to the Hoovers and their heirs and assigns from 1927 until January 1, 1986, when Kentucky Gas assigned its leasehold interest to Eastern Kentucky Production Company,

which merged into Equitable Energy Resources Company on January 1, 1989, thereby vesting Equitable with full possessory interest in the oil and gas leases. Equitable Energy Resources Company changed its name to Equitable Production Company in 1999. Equitable is a West Virginia for-profit corporation with its principal place of business in Pittsburgh, Pennsylvania.

The Lease established a rental payment of $200.00 per year, per well, drilled on the Hoover mineral estate. Following the Hoovers' conveyance of 50% of their interest in the mineral estate to third parties, the rental payment, as of 1933, was to be divided between the Hoovers ($100) and two other owners ($50 per owner). At various times throughout the course of dealings between the Hoovers and Equitable's predecessors in interest, several wells were in operation on the property. For the fifteen years prior to the filing of the second amended complaint, only one well was in operation on the property. During this same period, there were no exploring, drilling, or other productive activity by Equitable related to the Hoover property or the Lease. The term of the Lease is ten years "and as long thereafter as oil or gas, or either of them, is produced from said land by the Lessee." (J.A. at 697.) Accordingly, Equitable now holds Plaintiffs' mineral estate subject only to the annual $200 rental payments and the requirement that oil or gas continue to be produced on the property.

Plaintiffs contend that Equitable failed to make payments on the Lease from 1966, upon the death of Eva Roberts, until the appointment of George Hoover as administrator in 1980. Plaintiffs maintain that Roberts was the original administratrix of the Estate, although the district court found that George Hoover was in fact the original administrator. George Hoover received a lump-sum payment of back-due royalties and continued to administer the Estate until his death in 1990. Plaintiffs contend that Equitable, in 1992, terminated payments upon learning of George Hoover's death.

to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state and prove the plaintiff's claim for damages." *Id*. The defendant in *Gafford* met this burden by offering pretrial testimony that the plaintiff's claims for backpay would exceed the amount in controversy requirement, and that the plaintiff had not offered any rebuttal witnesses at the pretrial hearing. *Id*. at 160-61.

Failure to adequately plead the amount in controversy requirement may be cured by the presence of "clear allegations . . . that the case involved a sum well in excess of the $75,000 minimum." *Cook*, 141 F.3d at 326. However, Equitable's pleading of the amount in controversy requirement was quite adequate. In its petition for removal, Equitable alleged that Plaintiffs were "seeking unspecified and unliquidated damages, that based upon a fair reading of [Plaintiffs'] complaint, will exceed Seventy-Five Thousand Dollars ($75,000) if proven." (J.A. at 47.)

We agree that a fair reading of the unspecified and unliquidated damages sought by Plaintiffs provided that more than $75,000 was in controversy. Plaintiffs' initial complaint, attached to Equitable's petition for removal, sought, among other damages, royalties and gross values of minerals extracted from four separate wells, two of which dated back to 1941, as well as punitive damages. Plaintiffs' second amended complaint currently seeks, among other damages, royalties of minerals extracted from one well from February of 1992 until August of 1995, and gross values of minerals extracted from that well from August of 1995 to the present.

For purposes of determining whether this action was properly removed to district court, we review the district court decision as of the time of removal. *Rogers*, 230 F.3d at 871-72. Thus, when determining whether Equitable has met its burden of showing, by a preponderance, that more than $75,000 is in controversy, we review the damages sought by

filed a second motion to dismiss, again brought pursuant to Rules 12(b), 12(c), and 56. We find, given the frequent references by both sides to summary judgment, as well as the consistent attachment by both sides of exhibits and affidavits to their filings, that Plaintiffs were not surprised by an award of summary judgment in this case. Accordingly, the district court did not abuse its discretion when failing to give Plaintiffs notice of such an award. *Shelby County*, 203 F.3d at 931.

### III. Amount in Controversy

Plaintiffs contend that Equitable has not met its burden of demonstrating, by a preponderance of the evidence, that the amount in controversy requirement for a diversity action had been met. We review this question of law *de novo*. *See Gafford*, 997 F.2d at 161.

For diversity jurisdiction, 28 U.S.C. § 1332 requires that the "matter in controversy exceed . . . the sum or value of $75,000, exclusive of interest and costs". "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Corp. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted).

Plaintiffs argue that under *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1306-07 (E.D. Ky. 1990), an independent appraisal of the amount in controversy in this case is appropriate. Such appraisal should be begin, Plaintiffs contend, with disclosure by Equitable of the production records that Plaintiffs had previously requested for the wells at issue.

This Court places a burden on a defendant seeking to remove an action to federal court to show by a preponderance of the evidence that the amount in controversy requirement has been met. *Gafford*, 997 F.2d at 158. This standard "does not place upon the defendant the daunting burden of proving,

In 1995, Plaintiff Margaret Hayes' mother sent notice to Equitable that it was in default of its obligations under the Lease. Plaintiff Hayes sent a similar letter in 1996, seeking termination of the Lease for material breach caused by non-payment of the rentals due. In 1998, Hayes, who is the granddaughter of Melvin and Louisa Hoover, filed suit against Equitable and other corporate defendants as administratrix of the Hoover Estate, claiming rights to past royalties and breach of contract under the Lease. The Hoover Heirs later joined the Estate action as plaintiffs.

Plaintiffs contend that although Equitable claims that it reasonably withheld royalty payments in order to determine the proper parties for receiving payments, and that monies were escrowed during this time, Equitable did not, in any correspondence, mention opening an escrow account. Plaintiffs also contend that Equitable has failed to offer any evidence rebutting Plaintiffs' factual assertions that Equitable did not perform under any of the implied covenants or obligations in operation under the Lease, or that additional activity on the Hoover property would yield productive results to the mutual benefit of Plaintiffs and Equitable. Plaintiffs finally contend that the record is silent as to the actual amount in controversy, aside from the annual $100 royalty payment payable to the Hoover Heirs, and thus Equitable has failed to meet its burden of showing that the $75,000 amount in controversy requirement for diversity jurisdiction has been met.

### DISCUSSION

A federal court sitting in diversity applies the substantive law of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820 (6th Cir. 1990). The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of

citizenship. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

This Court reviews a district court's grant of summary judgment *de novo*. *Brooks v. Am. Broad. Cos.*, 932 F.2d 495, 500 (6th Cir. 1991). This Court will affirm a district court's order granting summary judgment "only if we determine that the pleadings, affidavits, and other submissions show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). All evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Babin*, 18 F.3d at 341 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## I.  Lease Termination

Plaintiffs contend that the district court erred when failing to find a genuine issue of material fact regarding Plaintiffs' power to terminate the Lease on grounds that Equitable unreasonably suspended royalty payments or, alternatively, on grounds that Equitable violated implied covenants in operation under the Lease.

## A.  Royalty Payments

The district court found that Equitable did not breach the Lease when suspending royalty payments because Equitable instead paid the royalties into an escrow account. Plaintiffs argue that Equitable has provided no evidence that it actually escrowed the royalties while attempting to determine the rightful owners of such royalties, and thus there is a genuine issue of material fact as to whether Equitable breached the Lease.

Second, we find it unlikely that Plaintiffs were surprised by an award of summary judgment in this case, and thus the district court did not abuse its discretion when failing to give Plaintiffs notice of such an award. Plaintiffs note that this Court discourages granting summary judgment *sua sponte*, particularly when the court does not give advance notice to the adversely affected party. *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). Federal Rule of Civil Procedure 12(b) empowers a district court to grant summary judgment *sua sponte* where the court is presented with materials outside the pleadings. Whether a district court must provide notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case. *Shelby County*, 203 F.3d at 931. However, "[w]here one party is likely to be surprised by the proceedings, notice is required." *Id*. (quotations and citation omitted).

References, by both Plaintiffs and Equitable, to the motion to dismiss as also being a motion for summary judgment, run throughout the record and thereby undermine any claim of surprise. Equitable's motion to dismiss was brought pursuant to Federal Rule of Civil Procedure 12(b), as well as Rules 12(c) and 56, both of which address summary judgment. Further, Plaintiffs' memorandum in opposition to Equitable's motion characterized it as a "Motion to Dismiss and Motion for Summary Judgment." (J.A. at 295.) Moreover, Plaintiffs specifically addressed in that memorandum that if "this action [should] be converted to a Motion for Summary Judgment via Federal Rules of Civil Procedure 12(c) and 56, Equitable's Motion still must fail." (J.A. at 295-96.) Plaintiffs then argued that "pursuant to Rule 56(f) . . . no entry of judgment should be entered at this point until discovery has been permitted[.]" (J.A. at 297.) Plaintiffs attached and/or incorporated by reference exhibits and affidavits to both of its amended complaints, as well as to its memorandum in opposition to Equitable's "Motion to Dismiss and Motion for Summary Judgment." (J.A. at 295.) Subsequently, in response to Plaintiffs' second amended complaint, Equitable

*Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). A denial of discovery is reviewed only for an abuse of discretion. *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). A district court's failure to provide notice when converting a motion to dismiss to a motion for summary judgment is reviewed for an abuse of discretion. *Shelby County Health Care Corp. v. S. Council of Indus. Workers*, 203 F.3d 926, 931 (6th Cir. 2000).

First, Plaintiffs' purported link between discovery and their power to terminate the Lease, as well as their ability to demonstrate Equitable's failure to show satisfaction of the amount in controversy requirement, is unavailing. Plaintiffs contend that discovery would have helped determine the reasonableness of Equitable's withholding of royalty payments. However, we have already determined that the question of Plaintiffs' power to terminate the Lease in this case does not turn on the reasonableness of Equitable's conduct concerning the royalty payments under Kentucky law.

Plaintiffs also contend that discovery would have assisted their demonstration of Equitable's failure to show that the amount in controversy requirement had been met. However, as discussed below, under *Rogers v. Wal-Mart*, 230 F.3d 868, 871-72 (6th Cir. 2000), and *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998), Equitable properly relied on the extensive relief sought by Plaintiffs in their original complaint when meeting its burden to show, by a preponderance of the evidence, that the amount in controversy requirement for diversity jurisdiction had been met. To find an abuse of discretion where a court denied Plaintiffs access to production records of the wells at issue, when such access was premised on amount in controversy grounds, would approach placing an amount in controversy burden on Equitable "to research, state and prove the plaintiff's claim for damages," which this Court prohibits. *Gafford*, 997 F.2d at 158. For the above reasons, we find that the district court did not abuse its discretion when declining to grant Plaintiffs' discovery request.

Equitable, rather than insisting that it had in fact escrowed the royalties, offers the alternative response that under Kentucky law, a lessor that has not received royalty payments cannot forfeit the lease, but can instead bring an action for payment. Thus, Equitable argues, the issue of whether the royalties were escrowed is unresponsive to the question of whether a genuine issue of material fact exists as to a material breach of the Lease. In addition, Equitable notes that Plaintiffs do not seek payment of the unpaid royalties, presumably because those royalties have already been deposited with the Court Registry System pursuant to the December 3, 1999 district court order. Plaintiffs instead merely reference the unpaid royalties as grounds for terminating the Lease.

Under Kentucky law, in the event of nonpayment of royalties, a lease at most permits an unpaid lessor to seek to recover a deficiency, rather than forfeit the lease, absent clear language to the contrary. *Kelley v. Ivyton Oil & Gas Co.*, 265 S.W. 309, 311 (Ky. Ct. App. 1924) ("[A] forfeiture of the lease will not be decreed because of arrears of rent or royalty except upon clear language in the lease providing therefor.") Further, Equitable notes, even if the lease permitted a forfeiture, "[t]he least-favored of all forfeitures are those founded upon mere delay in the payment of money." *Denniston v. Kenova Oil Co.*, 220 S.W. 1078, 1080 (Ky. Ct. App. 1920). Plaintiffs offer no authority in support of their claim that, under Kentucky law, mere nonpayment of royalties empowers a lessor to terminate a lease with or without clear language providing for such termination in the lease itself. Accordingly, our analysis will focus on the claim for which Plaintiffs do offer precedential support; namely, that a lessor may terminate a lease upon the lessee's breach of implied covenants to develop property.

## B. Implied Covenants

Plaintiffs contend that the Lease included implied covenants of reasonable development, further exploration, market production, and protection from drainage. In doing so, Plaintiffs rely upon *McMahan v. Boggess*, 302 S.W.2d 592 (Ky. Ct. App. 1957); *Gregory v. Sohio Petroleum Co.*, 261 S.W.2d 623 (Ky. Ct. App. 1953); *Midland Gas Corp. v. Reffitt*, 149 S.W.2d 537 (Ky. Ct. App. 1941); *Swamp Branch Oil and Gas Co. v. Rice*, 70 S.W.2d 3 (Ky. Ct. App. 1934); and *Warfield Natural Gas Co. v. Allen*, 59 S.W.2d 534 (Ky. Ct. App. 1933). Specifically, Plaintiffs argue that under the "prudent operator" standard, the lessee "owes a duty of diligence which would be reasonably expected of an operator of ordinary prudence, having due regard for both the interest of the lessee and the interest of the lessor." *McMahan*, 302 S.W.2d at 594. Plaintiffs maintain that a question of material fact exists as to whether Equitable and its predecessors, by merely making one $200 annual payment on one producing well on the property, failed to operate the Lease with due regard for the interest of Plaintiffs.

In *McMahan*, the Kentucky Court of Appeals noted that "it is recognized in Kentucky that in leases *of this nature* there is an implied obligation to develop the leasehold in good faith and with reasonable diligence." *See* 302 S.W.2d at 593 (citations omitted; emphasis added). The lease in *McMahan* was an oil and gas lease that required the lessees to begin drilling within one year or pay a delay rental of $1 per acre. The term of the lease was five years and for so long thereafter as gas or oil was produced. The leases in *Gregory*, *Midland Gas*, and *Swamp Branch* were also of the "nature" of the *McMahan* lease, in that each provided a specified lease term, followed by an indefinite extension of the lease term in the event that gas or oil was being produced.

Equitable distinguishes the leases in the *McMahan* line of cases as "production," rather than "flat-rate," leases, a distinction at issue in *Bruen v. Columbia Gas Trans. Corp.*,

no time period for the agreement pertaining to the original [utility] poles to end." *Id*. Similarly, the court in *Brownsboro Road Restaurant, Inc. v. Jerrico, Inc.*, 674 S.W.2d 40, 41 (Ky. Ct. App. 1984), which applied *Mid-Southern Toyota* to a franchise agreement, noted that there was "nothing in the agreement indicating that the parties intended it to terminate upon any particular time or event."

Even if we were to apply a Kentucky business contract rule to a lease of real property in this case, Plaintiffs have also failed to argue in support of applying *Mid-Southern Toyota* to a lease that terminates upon a particular event, specifically, the lessee's failure to produce oil or gas on the property. Because Plaintiffs have not addressed why this Court should apply the *Mid-Southern Toyota* rule to a lease of real property, or to any contract that terminates upon a particular event, we find unavailing Plaintiffs' claim that the Lease was terminable after a reasonable time.

Accordingly, because Plaintiffs offer no evidence of notice to, or demand of, Equitable regarding implied covenants to develop the property, and because Plaintiffs offer no argument as to why *Mid-Southern Toyota* should apply to a lease of real property that terminates upon a particular event, the district court did not err when finding no genuine issue of material fact regarding Plaintiffs' power to terminate the Lease under Kentucky law.

## II. Discovery

Plaintiffs contend that the district court abused its discretion when declining to grant Plaintiffs' discovery request. However, Plaintiffs' discussion of the issue on appeal primarily raises a separate issue concerning the district court's conversion of Equitable's motion to dismiss to a motion for summary judgment without notice to Plaintiffs. We will discuss each issue in turn.

"[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v.*

The district court therefore did not err in finding that no genuine issue of fact existed as to whether Plaintiffs may terminate the Lease under Kentucky law.

Nevertheless, Plaintiffs offer an alternative argument in favor of their power to terminate the Lease. Under *Mid-Southern Toyota, Ltd. v. Bug's Imports, Inc.*, 453 S.W.2d 544 (Ky. Ct. App. 1970), the Lease, being of indefinite duration, may be terminable after a reasonable period of time. *Mid-Southern Toyota* noted the general rule that courts avoid finding a right in perpetuity unless contract language is unequivocal. *Id.* at 549. The court in *Mid-Southern Toyota* then applied the rule, "especially applicable to distributorship contracts . . . that the contract is terminable after a reasonable time." *Id.* (citation omitted). Kentucky courts have also applied this rule in the more general context of "business contracts." *Elec. & Water Plant Bd. v. S. Cent. Bell Tel. Co.*, 805 S.W.2d 141, 143 (Ky. Ct. App. 1990).

First, Plaintiffs fail to address why this Court should apply a Kentucky business contract rule to a lease of real property. Second, the duration provision at issue is distinguishable from the provisions found to be "indefinite" in *Mid-Southern Toyota* and *South Central Bell*, because the Lease in this case terminates upon a particular event. Specifically, the Lease provides that it "shall remain in force for the term of ten years from this date and as long thereafter as oil or gas, or either of them, is produced from said land by the Lessee." (J.A. at 697.) In contrast, the distributorship contract in *Mid-Southern Toyota* provided a term of one year, renewable after that one year term so long as a certain sales level was met, at which point the contract became of indefinite duration. *Mid-Southern Toyota*, 453 S.W.2d at 549. The business contract in *South Central Bell* provided that notwithstanding termination of a joint use agreement, "this agreement shall remain in full force and effect with respect to all [utility] poles jointly used by the parties at the time of such termination." *S. Cen. Bell*, 805 S.W.2d at 143. The court in *South Central Bell* then noted that the provision "provide[d]

426 S.E.2d 522 (W.Va. 1992). In *Bruen*, the West Virginia Supreme Court of Appeals found that for "flat-rate" leases, a lessor's duty is merely to pay the flat rate, rather than develop the lease as required under "production" leases. Specifically, the court opined that "if an oil and gas lease contains a clause to continue the lease for a term 'so long thereafter as oil and gas is produced,' but also provides for 'flat-rate' rental payments, then quantity of production is not relevant to the expiration of the term of the lease if such 'flat-rate' rental payments have been made by the lessee." *Id*. at 527. As an example of a "flat-rate" rental payment, *Bruen* described a lease in which the rental payment had "no relation to the quantity of gas contemplated or actually produced. It was compensation fixed in advance of production and without any definite knowledge as to what the production would be. Hence, the rental reserved was the same for wells of light production and wells of heavy production." *Id*. at 525 (citation and emphasis omitted).

In the matter at hand, the district court, although not citing *Bruen*, mirrored its reasoning: Plaintiffs' implied covenant claim could not warrant relief because "the lease at issue provides for the payment of a royalty of $200 per year, rather than on production. Thus, the abundance of oil and gas, or lack thereof, produced on the real property at issue has no bearing on this action." (J.A. at 600-01.)

Plaintiffs respond that the fixed royalty payment does not exclude operation of implied covenants under the Lease. However, Plaintiffs' case law support for this claim consists of the *McMahan* line of cases discussed above, which all involved leases whose rental payments were tied to production levels. *See Gregory*, 261 S.W.2d at 624 (royalty interest in seven-eighths of oil produced from entire leasehold); *Midland Gas*, 149 S.W.2d at 537 (gas royalty of one-eighth of sale price for all gas sold and marketed from the premises); and *Swamp Branch*, 70 S.W.2d at 4 (royalty of one eighth of all gas from every well drilled on premises, the product from which is marketed and used off the premises).

Moreover, the lease in *McMahan* expressly required lessees to begin drilling within one year or otherwise pay a delay rental of $1 per acre. *McMahan*, 302 S.W.2d at 593; *see also Union Gas & Oil Co. v. Gillem*, 279 S.W. 626, 627 (Ky. Ct. App. 1925) (requiring lessee to begin drilling within one year or pay a delay rental of ten cents per acre).

Nevertheless, the Lease in this case also included "production" clauses similar to those in the *McMahan* line of cases. Specifically, the Lease provided for a royalty of "one-eight [sic] part of all oil produced . . . from the leased premises," as well as a requirement "to locate and commence a well on said premises within three months . . . or pay . . . [$1] per acre annually". (J.A. at 697.) These "production" components of the Lease cast doubt on the district court's finding that "the abundance of oil and gas, or lack thereof, produced on the real property at issue has no bearing on this action." (J.A. at 600-01.) Moreover, the sharp flat-rate/production distinction highlighted by Equitable was made under West Virginia, not Kentucky, law.

Accordingly, because Equitable has not produced any Kentucky authority for the position that implied covenants do not operate under a lease that includes a fixed rental payment, even when that lease also includes royalties tied to production, we question the district court's finding, as a matter of law, that no implied covenants were in operation under the Lease. However, we may affirm on any grounds supported by the record, even if different from the grounds relied on by the district court. *United States v. Allen*, 106 F.3d 695, 700 n. 4 (6th Cir. 1997). Because, as discussed below, we find Plaintiffs' implied covenant claim unavailing on grounds of failure to provide notice to, or make demand of, Equitable regarding any implied covenant, we affirm the district court's ultimate award of summary judgment.

Plaintiffs have failed to show a genuine issue of fact as to their satisfaction of the clear requirement under Kentucky law

that notice be provided to, or demand be made of, Equitable regarding the need to comply with an implied covenant:

> It is well settled law of this jurisdiction that where the right to have a lease forfeited for breach of the implied covenant to develop the property diligently and prudently is asserted, the lessor must have put the lessee in default by making definite and unequivocal demand of him that he do so within a reasonable time, or by giving that character of notice that compliance with the implied covenant is required. That is a condition precedent to the maintenance of a suit to forfeit, and the burden is upon the lessor to prove it.

*Sapp v. Massey*, 358 S.W.2d 490, 492 (Ky. Ct. App.1962).

Plaintiffs contend that two letters contained in the record, one dated August 24, 1995, from the widow of George Hoover, and one dated January 15, 1996, from Margaret Hayes, daughter of George Hoover, provided Equitable with requisite notice. However, these letters only alleged nonpayment of royalties, without any mention of implied covenants. Plaintiffs have offered no evidence of any notice to, or demand of, Equitable regarding any implied covenant. "[Where] the lessor did not, at any time, demand that the lessee begin operations and give [lessee] a reasonable opportunity to do so . . . there is no basis for the contention that the lease in question was forfeited because of the lessee's failure to begin operations." *Ohio Valley Oil & Gas Co. v. Irvin Dev. Co.*, 212 S.W. 110, 111 (Ky. Ct. App. 1919).

Accordingly, under *Sapp* and *Ohio Valley*, we find that no genuine issue of material fact exists as to whether Plaintiffs gave notice to, or made demand of, Equitable regarding the need to comply with any implied covenant. Plaintiffs thus cannot forfeit the Lease on grounds of Equitable's purported breach of implied covenants because Plaintiffs have produced no evidence that they satisfied the condition precedent for forfeiting a lease on those grounds. *Sapp*, 358 S.W.2d at 492.